UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE OPTIVER COMMODITIES LITIGATION

Master File No.
08-CV-6842 (LAP)
ECF Case

This Document Relates To:   All Actions

## CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

## FILED UNDER SEAL

Plaintiffs (¶¶35-38 *infra*) complain, upon knowledge as to themselves and their own acts and upon information (see ¶279 *infra*) and belief as to all other matters, as follows:

## I.   <u>NATURE OF THE ACTION</u>

1.      This action arises from Defendants' unlawful agreement to manipulate and their manipulation of the prices of Light Sweet Crude Oil (sometimes "Crude Oil"), New York Harbor Heating Oil (sometimes "Heating Oil"), and New York Harbor Gasoline (sometimes "Gasoline") futures contracts traded on the New York Mercantile Exchange ("NYMEX").

2.      Pursuant to their unlawful agreement, Defendants engaged in parallel and joint uncommercial and uneconomic conduct between at least March 2 and March 26, 2007, inclusive (the "Class Period"), in violation of NYMEX rules, the Commodity Exchange Act, as amended 7 U.S.C. §§ 1 *et seq.* ("CEA"), Sections 1 and 2 of the Sherman Antitrust Act ("Sherman Act"), 15 U.S.C. §§1 and 2, and common law.

3.      **Manipulation**.  In early 2007, Defendants Optiver US LLC (sometimes "Optiver US"), Optiver Holding B.V. (sometimes "Optiver Holding"), Optiver VOF, Randal Meijer, Bastiaan van Kempen, and Christopher Dowson agreed to and did develop a manipulative restraint of trade to profit from causing artificial prices of NYMEX Crude Oil contracts, Heating Oil contracts, and Gasoline contracts.

4.      Essentially, this agreed-upon restraint was that Defendants would transact a high volume of contracts, constituting a significant percentage of the volume of trading, during the Closing Period of the subject futures contract.  See ¶14 below (alleging the significant percentages of the trading volume during the respective Closing Periods that Defendants' large volume of trades constituted).  By compressing such large volume of trades into the brief Closing Period, Defendants uneconomically overpaid to buy contracts and thereby caused prices to

**FILED UNDER SEAL**

increase by as much as possible (or underreceived in order to sell contracts and thereby cause prices to decrease by as much as possible).  See ¶¶7-12 below.

5.      During the Class Period, Defendants implemented their agreement, including on (a) March 6, 14, 15, 16 and 19, 2007 in Crude Oil futures contracts (*see* ¶¶14, 122-124, 142,152-157, 158, 168-170, 171-181); (b) March 9, 13, 19 and 20, 2007 in Heating Oil futures contracts (*see* ¶¶14, 132-135, 136-141,171-187); and (c) March 2, 6, 8, 9, 13, 14, 15, 16, 19 and 21, 2007 in Gasoline futures contracts.

6.      Pursuant to their unlawful agreement, on each of the foregoing days in the specifically alleged contracts, Defendants amassed a dominant position, liquidated a portion of their position just before the Close of trading, and liquidated the bulk of their position during the Close of trading.

7.      The Close of trading is the most sensitive time in commodity futures contract trading.  The Closing (or Settlement) price is the most widely reported price of the day.  Cash market contracts are priced based upon the Closing price.  Futures market contracts known as Trading at Settlement ("TAS") contracts are also based upon the Closing price.  And the Closing price is used for many other purposes.

8.      Accordingly, various exchange rules govern the determination of the Closing price.  The NYMEX provides that the Closing price is or is based on the volume weighted average price ("VWAP") of trades over a specified period (usually two minutes) as alleged hereinafter.

9.      **Defendants' Express Admissions Of Uneconomic Conduct And Intent to Influence and Affect The Price of Futures Contracts**.  The Defendants' agreement and intent to manipulate and successful manipulation of NYMEX Crude Oil, Heating Oil, and Gasoline

futures were documented by their own emails and phone recordings in which Defendants stated that they would "hammer," "push," "move," "whack," "bully" and "influence" the prices of NYMEX Crude Oil, Heating Oil and Gasoline futures contracts. E.g.: "we are going to hammer the futures," ". . . be aggressive pushing it . . .," "we can influence VWAP [volume weighted average price]," "we are close to expiration, the future is becoming more illiquid, which makes influencing it easier," "the deciding factor is really how powerful are we," "we can move the market," "just whack the oil," ". . . you can move the market," ". . . really try and push it up as much as you can. . .," "the worse thing that can possibly happen to you is that you try to bully it and you run out of power," "[t]his is all built on the idea that we can control the VWAP [volume weighted average price]," "I can definitely push it," "bully the market," "if you do them both [types of contracts] in the same direction, you just got more powerful essentially," "[y]ou don't need [] all of that [3000 gasoline contracts] in order to push it, if you have a thousand you can really bully it around," "you can bully around more with more," "I am going to do 4000, and see how our power is," "that should be enough influence".[1]

10.     **Uneconomic Conduct**.  Standard practice among investors and traders is to transact for the best price possible. *In the Matter of DiPlacido*, CFTC No. 01-23, 2008 WL 4831204 (Nov. 5, 2008), *aff'd*, 364 Fed.Appx. 657, 660 (2d Cir. 2009) ("*DiPlacido*").  That is, traders seek to purchase for the lowest price available and with the least upward impact on price, and seek to sell for the highest price available with the least downward price impact.

11.     However, during the Class Period, emails and recordings by Defendants and their employees reflect that they built up large positions in order to be able uneconomically and

---

[1] The bracketed words and phrases throughout the Complaint have been provided by Plaintiffs.

**FILED UNDER SEAL**

uncommercially (a) overpay and buy for the highest price possible, and (b) under receive and sell for the lowest price possible.

12.     By accumulating a large TAS contract position, Defendants created a profit motive to offset that position through futures contract transactions in the opposite direction of the TAS position during the two minute Closing Period.

13.     Defendants, therefore, overpaid to buy or under sold to sell a significant percentage of contracts during the Closing Period and thereby intentionally caused the Volume Weighted Average Price ("VWAP"), to be artificially higher (or lower) than they otherwise would have been.

14.     Although even 1% of the volume may move prices, Defendants' enormous volume of uneconomic trades constituted

(a) **67.84**% of the trading volume in the NYMEX Gasoline 07J futures contract during the Closing Period on March 2,

(b) **13.33**% of the trading volume in the NYMEX Heating Oil 07J futures contract during the Closing Period on March 2,

(c) **64.57**% of the trading volume in the NYMEX Crude Oil 07J futures contract during the Closing Period on March 6,

(d) **54.67**% of the trading volume in the NYMEX Gasoline 07J futures contract during the Closing Period on March 6,

(e) **62.16**% of the trading volume in the NYMEX Heating Oil 07J futures contract during the Closing Period on March 6,

(f) **78.07**% of the trading volume in the NYMEX Gasoline 07J gasoline futures contract during the Closing Period on March 8,

4

**FILED UNDER SEAL**

(g) **78.06**% of the trading volume in the NYMEX Gasoline 07K futures contract during the Closing Period on March 8,

(h) **69.90**% of the trading volume in the NYMEX Crude Oil 07J gasoline futures contract during the Closing Period on March 8,

(i) **60.03**% of the trading volume in the NYMEX Heating Oil 07J futures contract during the Closing Period on March 9,

(j) **68.96**% of the trading volume in the NYMEX Heating Oil 07K futures contract during the Closing Period on March 9,

(k) **50.97**% of the trading volume in the NYMEX Gasoline 07J futures contract during the Closing Period on March 13,

(l) **98.30**% of the trading volume in the NYMEX Gasoline 07K futures contract during the Closing Period on March 13,

(m) **58.70**% of the trading volume in the NYMEX HO07J futures contract during the Closing Period on March 13,

(n) **91.50**% of the trading volume in the NYMEX Crude Oil 07J futures contract during the Closing Period on March 13,

(o) **63.53**% of the trading volume in the NYMEX Gasoline 07J futures contract during the Closing Period on March 14,

(p) **74.14**% of the trading volume in the NYMEX Crude Oil 07K futures contract during the Closing Period on March 14,

(q) **81.47**% of the trading volume in the NYMEX Gasoline 07J futures contract during the Closing Period on March 15,

**FILED UNDER SEAL**

(r) **19.45%** of the trading volume in the NYMEX Gasoline 07K futures contract during the Closing Period on March 15,

(s) **70.84%** of the trading volume in the NYMEX Crude Oil 07J futures contract during the Closing Period on March 15,

(t) **57.39%** of the trading volume in the NYMEX Gasoline 07J futures contract during the Closing Period on March 16,

(u) **97.67%** of the trading volume in the NYMEX Heating Oil 07J futures contract during the Closing Period on March 16,

(v) **75.6%** of the trading volume in the NYMEX Crude Oil 07J futures contract during the Closing Period on March 19,

(w) **73.7%** of the trading volume in the NYMEX Gasoline 07J futures contract during the Closing Period on March 19,

(x) **79.7%** of the trading volume in the NYMEX Heating Oil 07J futures contract during the Closing Period on March 20,

(y) **84.1%** of the trading volume in the NYMEX Gasoline 07J futures contract during the Closing Period on March 20,

(z) **70.1%** of the trading volume in the NYMEX Crude Oil 07K futures contract during the Closing Period on March 20,

(aa) **77.8%** of the trading volume in the NYMEX Gasoline 07J futures contract during the Closing Period on March 21,

(bb) **17.6%** of the trading volume in the NYMEX Gasoline 07K futures contract during the Closing Period on March 21, and

**FILED UNDER SEAL**

15.     Again, trading even 1% of the volume during the Closing Period may manipulate prices and Defendants' uneconomic trades of amounts far in excess of 1% of the trading volume, did artificially move and manipulate prices as more specifically alleged hereinafter.

16.     Such prices were artificial for numerous reasons.  For example, such prices (a) were caused by an uneconomic form of trading, (b) violated NYMEX rules, (c) resulted from trades that intentionally sought to move and manipulate prices as much as possible, (d) resulted from trades that purposely restrained trade by seeking to move prices as far as possible contrary to the standard forms of trading that further price discovery, and (e) caused a trend of increased divergence between the prices during the pre-close and the prices during the Closing Period.

17.     In the latter regard, Defendants also made (a lesser amount of) transactions that were the opposite of their TAS position at prices registered immediately prior to the Closing Period when Defendants transacted futures contracts in an amount roughly equal to 20-30% of the overall TAS position.  For example, if Defendants were short 1000 TAS contracts, Defendants would buy roughly 200-300 contracts during 2:25-2:27:59, and then engaged in compressed overbuying of 400-800 contracts during the 2:28:00-2:30:00 Closing Period.  This compressed overbuying caused the prices during the Close to increase above the prices existing immediately before the Closing Period.  All of Defendants' TAS positions represented sales at the VWAP price, in this example, whereas Defendants' offsetting futures contract trades, in this example had an average purchase price which was, due to the pre-Close purchases, somewhat less than the VWAP price.  This difference between the higher VWAP price for all the TAS contracts versus the somewhat lower average prices for all of the offsetting futures contracts, created and determined Defendants' profit from their manipulative restraint of trade.

**FILED UNDER SEAL**

18.     Pursuant to Defendants' agreement, Defendants succeeded in achieving market power during the Closing Period in order to move and manipulate prices registered during that Closing Period.

19.     Because of the arbitrage between the different expirations within a given futures contract, the rules for establishment of Closing or Settlement prices in the futures contracts at issue here, the expectations of traders, and other factors, Defendants caused artificial prices not only in the front month contract in which they transacted, but also, typically in the prices of succeeding expirations of that same contract.  See immediately below.

20.     **Defendants' Trades Had A Statistically Significant Impact On The Prices**.

a.     **Defendants' Gasoline contract trades impacted Gasoline contract prices.**  That is, Defendants' trades in the April 2007 Gasoline contract had a statistically significant artificial impact on prices for the April, May, June and July 2007 Gasoline contracts. *See* ¶¶ 206-210.

b.     **Defendants' Heating Oil contract trades impacted Heating Oil contract prices.**  Defendants' trades in the April 2007 Heating Oil contract had a statistically significant artificial impact on prices for the April, May, June and July 2007 Heating Oil contracts.

c.     **Defendants' Crude Oil contract trades only impacted Crude Oil prices.**  Defendants' trades in the April 2007 Crude Oil contract had a statistically significant artificial impact on prices for the April, May, June and July 2007 Crude Oil contracts.

21.     Defendants' uneconomic and un-commercial trades also violated NYMEX rules in order to manipulate prices and then lie about it to the NYMEX investigation.  *See* ¶¶ 190-200.

**FILED UNDER SEAL**

22.     In connection with the unlawful and manipulative conduct alleged herein, this Court entered a Final Consent Order of Permanent Injunction, Civil Monetary Penalty and Other Relief against Defendants Optiver Holding B.V., Optiver US, LLC (Optiver), Optiver VOF, Randal Meijer, Bastiaan van Kempen, and Christopher Dowson.

23.     Among other relief, the consent order requires the Defendants to pay a $13 million civil monetary penalty and $1 million in disgorgement.  The consent order also provides for trading limitations on Optiver and prohibits Defendants Dowson, Meijer, and van Kempen from trading commodities for 8 years, 4 years, and 2 years, respectively.

24.     A standard economic tool for measuring whether there was a persistent, non-transitory impact of high volumes of trades is to compare the midpoint of the bid ask spread before the high volume of trades begins (here, immediately before the beginning of the Closing Period), with the midpoint of the bid ask spread that is registered a reasonable time after the trades.  In these circumstances, a reasonable time for the transitory impact of the trades to subside is (or includes) 15 minutes after the Close.

25.     Applying this standard economic analysis to the prices here, shows that Defendants' enormously large percentages of the trading during the Closing Period consistently caused a statistically significant, persistent, and non-transitory impact on prices.

26.     Accordingly, the Plaintiffs and Class members who held positions in April, May, June and July expirations of the NYMEX Crude Oil, Heating Oil, or Gasoline contracts at the times that Defendants manipulated the prices of such expirations (as later alleged herein by contract, expiration, and date), thereafter liquidated their position in such expiration at an artificial price even if such liquidation occurred after the Class Period.

9

**FILED UNDER SEAL**

27.     As a direct result of Defendants' conduct, Plaintiffs have been injured, and suffered and are entitled to recover their actual damages.

## II.     JURISDICTION AND VENUE

28.     Light Sweet Crude Oil is a "commodity" and is the "commodity underlying" Light Sweet Crude Oil futures contracts traded on the NYMEX, as those terms are defined and used in Section la(4) and 22 of the CEA, 7 U.S.C. §§ la(4) and 25(a)(1)(D), respectively.

29.     New York Harbor Heating Oil is a "commodity" and is the "commodity underlying" New York Harbor Heating Oil futures contracts traded on the NYMEX, as those terms are defined and used in Section la(4) and 22 of the CEA, 7 U.S.C. §§ la(4) and 25(a)(l )(D), respectively.

30.     New York Harbor Gasoline is a "commodity" and is the "commodity underlying" New York Harbor Gasoline futures contracts traded on the NYMEX, as those terms are defined and used in Section 1a(4) and 22 of the CEA, 7 U.S.C. §§ la(4) and 25(a)(l)(D), respectively.

31.     This action arises under Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2, Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, and Section 22 of the CEA, 7 U.S.C. § 25.

32.     This Court has jurisdiction over this action pursuant to Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15(a) and 26, Section 22 of the CEA, 7 U.S.C. § 25 and 28 U.S.C. §§ 1331 and 1337.

33.     Venue is proper in the Southern District of New York, pursuant to 15 U.S.C. §15(a), Section 22 of the CEA, 7 U.S.C. § 25(c) and 28 U.S.C. § 1391(b), (c) and (d). Defendants transacted business in the Southern District of New York, the claims arose in the

**FILED UNDER SEAL**

Southern District of New York, and a substantial part of the events or omissions giving rise to the claims asserted herein occurred in the Southern District of New York.

34.     Defendants made use of the means and instrumentalities of transportation or communication in, or the instrumentalities of, interstate commerce, or of the U.S. Mail in connection with the unlawful acts and practices and courses of business alleged in this Complaint.

### III.   PARTIES

**A.     Plaintiffs**

35.     Plaintiff Michael Amdur.

a.   Plaintiff Michael Amdur was already long 120 NYMEX April 2007 Crude Oil futures contracts at the beginning of the Class Period.  On March 6, 2007, Defendants manipulated the price of these contracts up.  Subsequently, Plaintiff Amdur entered additional long positions: three contracts on March 7; nine contracts on March 8; 18 contracts on March 9; four contracts on March 12; five contracts on March 13; and 45 contracts on March 14.  The prices for these contracts were artificially high because of Defendants' upward manipulation, and Plaintiff Amdur suffered injury as a result.  When Defendants manipulated the price of these contracts down on March 14, 2007, Plaintiff Amdur was long 204 NYMEX April 2007 Crude Oil futures contracts.  Plaintiff Amdur liquidated these positions on March 15, 2007, at the time Defendants had manipulated the price of such contracts lower and suffered injury as a result during the Class Period.

b.   Plaintiff Michael Amdur was long 20 NYMEX May 2007 Crude Oil futures contracts at the beginning of the Class Period.  On March 15, Plaintiff Amdur entered 28 additional long contracts.  Plaintiff Amdur liquidated 34 contracts on March 16, 2007, at the time

11
**FILED UNDER SEAL**

Defendants had manipulated the price of such contracts lower and suffered injury as a result.  On March 19, Plaintiff Amdur entered five additional long contracts, at the time Defendants had manipulated the price of such contracts higher and suffered injury as a result.  Subsequent to Defendants' downward manipulation of the price on March 19, 2007, Plaintiff Amdur entered eight additional long contracts on March 22, and then liquidated eight contracts on March 28; one contract on March 29; and 30 contracts on March 30.  The prices of these contracts were artificially low because of Defendants' downward manipulation, and Plaintiff Amdur suffered injury as a result during the Class Period.

36.     Plaintiff Brendan Cody.

a.   Plaintiff Brendan Cody was long two April 2007 Crude Oil futures contracts at the beginning of the Class Period.  On March 12, 2007, Plaintiff Cody entered a short position of 50 contracts in the June 2007 Crude Oil futures contract.  Plaintiff Cody thereafter liquidated these positions on March 19, 2007, at the time Defendants had manipulated the price of such contracts higher and suffered injury as a result during the Class Period.

37.     Plaintiff Charles Hynes.

a.   Plaintiff Charles Hynes was long 130 NYMEX April 2007 Heating Oil futures contracts at the beginning of the Class Period.  Plaintiff Hynes liquidated 27 contracts on March 22, 2007, at the time Defendants had manipulated the price of such contracts lower and suffered injury as a result.  Plaintiff Hynes liquidated the remaining 103 contracts on March 26, 2007, at the time Defendants had manipulated the price of such contracts lower and suffered injury as a result during the Class Period.

b.   Plaintiff Charles Hynes was short two NYMEX February 2008 Heating Oil futures contracts at the beginning of the Class Period.  Plaintiff Hynes liquidated these contracts

**FILED UNDER SEAL**

on March 16, 2007, at the time Defendants had manipulated the price of such contracts higher and suffered injury as a result during the Class Period.

      c.   Plaintiff Charles Hynes was long 33 NYMEX April 2007 RBOB futures contracts at the beginning of the Class Period.  Plaintiff Hynes liquidated 29 contracts on March 15, 2007, at the time Defendants had manipulated the price of such contracts lower and suffered injury as a result.  Plaintiff Hynes liquidated the remaining four contracts on March 20, 2007, at the time Defendants had manipulated the price of such contracts lower and suffered injury as a result during the Class Period.

      d.   Plaintiff Charles Hynes was short 11 NYMEX May 2007 RBOB futures contracts at the beginning of the Class Period.  Plaintiff Hynes liquidated two contracts on March 7, 2007, at the time Defendants had manipulated the price of such contracts higher and suffered injury as a result.  Plaintiff Hynes liquidated five contracts on March 8, 2007, at the time Defendants had manipulated the price of such contracts higher and suffered injury as a result.  Plaintiff Hynes liquidated the remaining four contracts on March 13, 2007, at the time Defendants had manipulated the price of such contracts higher and suffered injury as a result during the Class Period.

      e.   Plaintiff Charles Hynes was long nine NYMEX June 2007 RBOB futures contracts at the beginning of the Class Period.  Plaintiff Hynes liquidated one contract on March 5, 2007, at the time Defendants had manipulated the price of such contracts lower and suffered injury as a result.  Plaintiff Hynes liquidated five contracts on March 16, 2007, at the time Defendants had manipulated the price of such contracts lower and suffered injury as a result.  Plaintiff Hynes liquidated two contracts on March 20, 2007, at the time Defendants had manipulated the price of such contracts lower and suffered injury as a result.  Plaintiff Hynes

13

**FILED UNDER SEAL**

liquidated the remaining one contract on March 21, 2007, at the time Defendants had manipulated the price of such contracts lower and suffered injury as a result during the Class Period.

   f. Plaintiff Charles Hynes was long 23 NYMEX July 2007 RBOB futures contracts at the beginning of the Class Period.  Plaintiff Hynes liquidated eight contracts on March 9, 2007, at the time Defendants had manipulated the price of such contracts lower and suffered injury as a result.  Plaintiff Hynes liquidated 11 contracts on March 16, 2007, at the time Defendants had manipulated the price of such contracts lower and suffered injury as a result. Plaintiff Hynes liquidated the remaining four contracts on March 21, 2007, at the time Defendants had manipulated the price of such contracts lower and suffered injury as a result during the Class Period.

   38. Plaintiff Richard White.

   a. Plaintiff Richard White was long 11 October 2007 NYMEX RBOB futures contracts at the beginning of the Class Period.  Plaintiff White liquidated four contracts on March 5, 2007, at the time Defendants had manipulated the price of such contracts lower and suffered injury as a result.  Plaintiff White liquidated the remaining two contracts on March 26, 2007, at the time Defendants had manipulated the price of such contract lower and suffered injury as a result during the Class Period.

   **B.**  **Defendants**

   39. **Defendant Optiver US LLC**.

   a. Defendant Optiver US LLC is an Illinois company, founded in 1999, with its principal place of business at 130 E. Randolph Street, Suite 1300, Chicago IL 60601.

   b. Defendant Optiver US LLC is a subsidiary of Optiver Holding B.V.

**FILED UNDER SEAL**

c.   Optiver US LLC trades commodity futures, options on commodity futures, stocks, and stock options, listed on organized exchanges in the United States, including, among others, NYMEX and the New York Stock Exchange.

40.   **Defendant Optiver Holding B.V.**

a.   Defendant Optiver Holding B.V. is a Netherlands corporation, with its principal place of business at Strawinskylaan 3095, 1077 ZX Amsterdam, The Netherlands, which engages in trading activity through Optiver US LLC, Optiver VOF, and certain other companiess.

b.   Optiver Holding B.V. manages certain activities of Optiver US LLC and Optiver VOF through its Global Management Board (the "Global Management Board").

c.   In practice, two-thirds of the profits of Optiver US LLC and Optiver VOF are distributed to Optiver Holding  B.V., and the remaining one-third is distributed among the other partners of Optiver VOF.

41.   **Defendant Optiver VOF.**

a.   Defendant Optiver VOF is a Netherlands general partnership with its principal place of business at Strawinskylaan 3095, 1077 ZX Amsterdam, The Netherlands.  Defendant Optiver VOF has different owners than Defendants Optiver Holding or Optiver US LLC.  Also, per their different legal organizations and as alleged herein, Optiver VOF, Optiver Holding and Optive US LLC each has different managements and different decision makers.

b.   Optiver VOF is comprised of various partners, including Defendant Optiver Holding B.V., (through its wholly owned subsidiary Optiver B.V.), and Defendants Dowson, Meijer, and van Kempen (through their respective wholly owned companies, Cobblestones LLC and Randal Derivatives B.V.)

**FILED UNDER SEAL**

42.    **Defendant Christopher Dowson**.

a.    Defendant Christopher Dowson is a citizen of the United Kingdom, currently residing in Chicago, Illinois.

b.    Dowson began working for Optiver VOF in September 2000 as an equities trader.

c.    In or about October 2006, Defendant Dowson began to spend time at Optiver US LLC, in Chicago.

d.    In or about January 2007, Defendant Dowson moved to Chicago and became the Head of Trading for Optiver US LLC.

e.    Beginning in or about January 2007, Defendant Dowson became, and was at all relevant times thereafter, responsible for Optiver US LLC's trading of, among other things, commodity futures, including Crude Oil, Heating Oil, and New York Harbor Gasoline.

f.    Defendant Dowson was employed by Optiver US LLC.  He maintained a partnership interest in Optiver VOF.  In those legal capacities but for his own economic interests, he combined, conspired and agreed with the other Defendants to manipulate and move prices of certain NYMEX energy futures. Defendant Dowson participated in and directed other Optiver US LLC traders, including but not limited to Ferhad Mekic ("Mekic"), in carrying out the conspiracy to manipulate prices, as more fully described below.

g.    For 2007, Defendant Dowson received approximately $100,000 U.S. in salary and approximately €1,700,000 based on his partnership share in Optiver VOF.

43.    **Defendant Bastiaan van Kempen**.

a.    Defendant Bastiaan van Kempen is a Dutch citizen, currently residing in Chicago, Illinois.

16
**FILED UNDER SEAL**

b.   Defendant van Kempen began working at Optiver Holding B.V. in Amsterdam in or about October 1998, first as a trader and later as a director.

c.   In or about 2001, Defendant van Kempen moved to Chicago as the head of trading for Optiver US LLC's newly opened Chicago office.

d.   In or about 2003, Defendant van Kempen became the Chief Executive Officer of Optiver US LLC, and has maintained that position to the present date.

e.   At all relevant times, and as set forth below, Defendants van Kempen and Dowson jointly managed Optiver US LLC.

f.   Defendant van Kempen combined, conspired and agreed with the other Defendants to manipulate and move prices as alleged herein.  Pursuant to the agreement, he participated in the development of the manipulative strategy, strategic discussions therefor, and monitored the trading activity at Optiver US LLC as the manipulative conspiracy was being implemented.

g.   Also pursuant thereto, Defendant van Kempen also instructed Optiver US LLC's traders in executing the strategy.

h.   Defendant van Kempen is, and was at all relevant times, generally responsible for Optiver US LLC's business operations and relationships with exchanges and other third-parties.

i.   Defendant van Kempen's base salary was approximately $55,000 and in 2007 he received approximately $1,600,000 from his partnership share in Optiver VOF.

44.   **Defendant Randal Meijer**.

a.   Defendant Randal Meijer is, and was at all relevant times, the Head of Trading, supervising the trading activity of each of Optiver Holding B.V.'s subsidiaries, including Optiver US LLC and Optiver VOF.

FILED UNDER SEAL

b.   Defendant Meijer is one of five members of Optiver Holding B.V.'s Global Management Board, which oversees Optiver US LLC, Optiver VOF and other affiliated entities.

c.   Defendant Meijer combined, conspired and agreed with the Optiver Defendants to manipulate and move prices.  Pursuant to this conspiracy, Meijer worked to develop, refine and carry out the manipulative trading strategy, ensure that Defendants would have the necessary influence and would be able to "control the VWAP," and helped direct the execution of the strategy by Optiver US LLC's traders, including, but not limited to one trader, in particular, whom Meijer instructed to make sure he is "trading big enough."

d.   In or about 2007, Defendant Meijer received approximately €1,700,000 from his partnership share in Optiver VOF and shareholding dividends from Optiver Holding B.V.

45.     Plaintiffs allege and refer collectively to Optiver Holding B.V., Optiver US LLC, Optiver VOF, Dowson, van Kempen, and Meijer as "Defendants" or the "Optiver Defendants." Each Defendant has his or its own set of economic interests, and each company entity had different owners from the other companies, and different legal decision makers from the others.

## IV.     BACKGROUND

### A.     The Manipulated Contracts and Markets

46.     NYMEX is a designated contract market under Section 5(b) of the CEA, 7 U.S.C. § 7(b).  NYMEX is the world's largest physical commodity futures exchange and the preeminent trading forum for energy and precious metals.

47.     Commodity futures contracts are traded on exchanges, such as NYMEX, which provide a physical or electronic facility in which multiple market participants have the ability to execute or trade such futures contracts by accepting bids and offers made by other market participants, with prices displayed for all to see.

**FILED UNDER SEAL**

48.     Prices for transactions on NYMEX are continuously reported during the trading day.

49.     The prices displayed on the floor of the Exchange and on its electronic platforms are disseminated to information vendors and news services worldwide.

50.     Settlement prices for NYMEX contracts are reported daily.

51.     NYMEX also reports trading volume and open interest on a daily basis.

52.     NYMEX prices are used as global benchmarks for a variety of energy markets; accordingly it is paramount that the markets have confidence in the integrity of these transactions.

53.     A commodity futures contract is a standardized bilateral executory agreement for the purchase and sale of a particular commodity. See *Leist v. Simplot*, 638 F.2d 283, 322 (2d Cir. 1980) (Friendly, J.) ("*Leist*") *aff'd, Merrill Lynch Fenner & Smith v. Curran*, 456 U.S. 353, 384-85 (1982). In the context of futures trading, a commodity is the underlying instrument upon which a futures contract is based.

54.     The "bilateral" aspect of the futures contract is that there is a seller and buyer. *Leist*, 638 F.2d at 322.

55.     The sellers are one-half of the bilateral futures contract and one-half of the commodity futures market. *Id.* They are referred to as "shorts." *Id.*

56.     The buyers are the other one-half, and are referred to as "longs." *Id.*

57.     **The NYMEX Light Sweet Crude Oil Contract**.  The NYMEX Light Sweet Crude Oil futures contract trades in units of 1,000 U.S. barrels (42,000 gallons) of West Texas Intermediate light sweet crude oil ("WTI"), and the delivery point is Cushing, Oklahoma.

19
**FILED UNDER SEAL**

58.     The price for the NYMEX Light Sweet Crude Oil contract is quoted in U.S. dollars and cents per barrel and the minimum price fluctuation (also known as one "tick") is $0.01 (10) per barrel ($10.00 per contract).  *See* ¶¶77-79 (settlement procedures).

59.     **The NYMEX Heating Oil Contract**.  The NYMEX Heating Oil futures contract trades in units of 42,000 gallons (1,000 U.S. barrels) and is based on delivery in New York harbor, which is the principal cash market trading center.

60.     The price for the NYMEX Heating Oil contract is quoted in U.S. dollars and cents per gallon and the minimum price fluctuation (or one "tick") is $0.0001 (0.010) per gallon ($4.20 per contract).  *See* ¶¶77-79 (settlement procedures).

61.     **The NYMEX New York Harbor Gasoline Contract**.  The NYMEX New York Harbor Gasoline futures contract trades in units of 42,000 gallons (1,000 U.S. barrels) and is based on delivery at petroleum products terminals in the New York harbor.

62.     New York Harbor Gasoline is a wholesale non-oxygenated blendstock traded in the New York Harbor barge market.

63.     The price for the NYMEX New York Harbor Gasoline contract is quoted in U.S. dollars and cents per gallon and the minimum price fluctuation (or one "tick") is $0.0001 (0.010) per gallon ($4.20 per contract).  *See* ¶¶77-79 (settlement procedures).

64.     The NYMEX Crude Oil, Heating Oil, and New York Harbor Gasoline futures and "Trading at Settlement" or "TAS contracts are traded on the NYMEX trading floor by open outcry trading, from 9:00 a.m. until 2:30 p.m., and are traded electronically on Globex (described below) from 6:00 p.m. the previous calendar day until 2:30 p.m.

**FILED UNDER SEAL**

65.     In accordance with NYMEX rules, the Crude Oil, Heating Oil, and Gasoline futures contracts, in certain circumstances, also are traded in a two-minute trading session, which takes place after the close of trading (the "Post-Close").

66.     NYMEX also permits traders to purchase and sell Crude Oil, Heating Oil, and Gasoline futures contracts via its "TAS" contract.

67.     TAS contracts are futures contracts, except that the parties determine at the initiation of the contract that the price will be the day's settlement price plus or minus an agreed differential.

68.     A TAS contract which has been bought or sold can be offset by trading a futures contract in the opposite direction.

69.     A TAS contract is available for trading for the front two months (i.e. the upcoming delivery month and the following delivery month), except on the last trading day for the underlying futures.

70.     A TAS contract is priced either at even or based on a differential (plus or minus) in points off settlement in the underlying contract.

71.     A TAS trade done at the price of 100 will clear exactly at the final settlement price of the day.

72.     The maximum differential for a TAS contract is 10 "points" or "ticks" from the settlement; i.e., TAS contracts are bought and sold in a range from 110 to 90.  One point or tick in a TAS contract corresponds to the minimum price fluctuation in the underlying future.

73.     A NYMEX TAS contract has the same specifications as the standard NYMEX contract, except that the price of a TAS contract is determined by that day's closing price rather than at the moment the transaction is created, as for a standard NYMEX futures contract.

21
**FILED UNDER SEAL**

74.    A trader can profit by buying and selling TAS contracts, making money on the difference in price; this activity is known as "scalping."

75.    In addition, a trader can make a profit by either selling TAS contracts for a premium (101 or above) or buying for a discount (99 or below) and subsequently trading futures in the opposite direction to achieve an average price equal to or better than the settlement price.

76.    Also, a person may satisfy TAS contracts by offsetting their versus futures contracts.  In that instance, the profit or loss is determined by the average price of the futures compared to the average price (which is exactly or essentially the VWAP price) of the TAS contracts.

**B.    The Settlement Process**

77.    The settlement of futures contracts is subject to rules promulgated by NYMEX.

78.    Under the 2007 NYMEX Floor Rules, the settlement price of the current delivery or spot month was the weighted average price (rounded to the nearest minimum fluctuation) ("VWAP") of all outright transactions which occur in that delivery month in the closing range.  The closing range is the final two minutes of trading.

79.    The same settlement procedure (using VWAP during the last 2 minutes of trading) was used for all other delivery months when certain open interest and volume criteria were met.   If those open interest and volume criteria were not met, the settlement price was determined based upon spread relationships between and among contract months.

**C.    NYMEX Prohibits the Use of TAS Positions
As A Way to Manipulate the Settlement Price**

80.    On or about October 19, 2006, NYMEX issued a compliance advisory:

Compliance Advisory: Disruptive Use of TAS and MO Trading
Practices

Members are reminded that **misuse of TAS or MO trades to acquire a position in order to unfairly affect a settlement price subject [sic] the member and/or the customer to disciplinary action for any of a number of rule violations** including but not limited to attempted price manipulation, disruptive trading, wash trading, or conduct substantially detrimental to the exchange, **investigation of suspected manipulative pricing involving TAS will focus on the percentage of TAS positions acquired** by a trader, group or traders or customer(s) **and whether the offset of that position during the close was disruptive, collusive, and or caused or attempted to cause aberrant price movement in the close.**

NYMEX Notice No. 548 (10/19/2006 (emphasis added).

81.    Defendants colluded together in order repeatedly to disrupt the market and cause the aberrant price moves alleged herein.

82.    The October 19, 2006 NYMEX Compliance Advisory was available to the public on NYMEX's website at all relevant times.

**D.    Globex: The Trading Platform Used In
    Defendants' Manipulative Trading Scheme**

83.    Globex is an electronic trading platform on which customers can directly place NYMEX trades.

84.    NYMEX products, including the Crude Oil, Heating Oil, and Gasoline futures and TAS contracts are available to be traded via Globex.

85.    TAS contracts for a particular trade date may be traded via Globex from 6:00 p.m. the previous calendar day until 2:30 p.m.

86.    A Globex user can view quotes placed by other traders. The Globex screen shows the quantity and price of the best five bids and asks in the system in real time. The Globex screen also shows the quantity and price of executed trades as they occur.[2]

---

[2] In addition to trading NYMEX Crude Oil TAS contracts via Globex, the Defendants also traded IntercontinentalExchange ("ICE Futures Europe") WTI TAS contracts that, like the NYMEX TAS, were priced based on the daily settlement price of the NYMEX Crude Oil futures contract.

**FILED UNDER SEAL**

87.     In addition to trading NYMEX Crude Oil TAS contracts via Globex, the Defendants also traded IntercontinentalExchange ("ICE Futures Europe") WTI TAS contracts that, like the NYMEX TAS, were priced based on the daily settlement price of the NYMEX Crude Oil futures contract.

## V.     SUBSTANTIVE ALLEGATIONS

88.     Provided that there is no price manipulation, the prices produced by futures contract trading serve three legitimizing functions: (1) price discovery, (2) efficient and fair risk transfer (also known as hedging), and (3) reduction in price volatility. *Cargill, Inc. v. Hardin*, 452 F.2d 1154, 1173 (8th Cir. 1971).

89.     But price manipulation destroys all three legitimizing functions of commodity futures trading. *Id.*

90.     In or about January 2007, Defendant Optiver US LLC, per Defendant Christopher Dowson's direction, began trading NYMEX TAS contracts in Crude Oil, Heating Oil, and Gasoline.  By February 2007, all Defendants combined, conspired and agreed with one another to develop an unlawful manipulative strategy to manipulate prices.

91.     Pursuant to this agreement, combination and conspiracy, Defendants made manipulative trades during March 2007.  Having accumulated a large net long or short TAS position, Optiver US LLC significantly increased Defendant' profits by trading large volumes of NYMEX futures contracts in the opposite direction of Defendants' TAS positions just before and during the Close with the goal to manipulate to artificial levels the prices of NYMEX futures contracts during the Close.

92.     Beginning at or about 6:00 p.m., when a new session of TAS trading began on NYMEX, Defendants, through Defendants Optiver US LLC and Dowson, and under the

**FILED UNDER SEAL**

immediate supervision of Defendants Meijer and Dowson, began entering orders for TAS

contracts for the following day, placing a series of orders to buy TAS contracts at a range of

prices and a series of orders to sell an approximately equal number of TAS contracts also at a

range of prices.

93.     The Globex system operated on a "first in, first out" basis.  This means that bids

and offers quoted at the same price would be executed based on the order in which they were

entered into the system.  However, an offer to sell at a lower price, or to buy at a higher price,

would be placed by the Globex system in line for execution ahead of pre-existing orders at less

favorable prices.

94.     To try to ensure that their TAS orders were first in the queue, the Optiver

Defendants and Dowson used an Excel spreadsheet which had been developed for Defendant

Optiver US LLC to work with the Eccoware system such Defendant used to place their orders on

Globex.  The program was designed to rapidly enter a series of orders into Globex and was

referred to by Defendants as the "Hammer."

95.     Defendants and their traders had frequent discussions about improving the

"Hammer" to make sure their orders were getting into the system first.

96.     During a conversation on March 5, Defendant Optiver VOF, per trader Gerben

Goojiers, told Defendant Optiver US, per trader Ferhad Mekic, that:

> I'll look into improving the Hammer tool tomorrow, so that we can
> do this with a finer frequency so that should give us a better chance
> of being up front again.

97.     Typically, few trades were executed overnight and Defendants' TAS trades would

take place the following day.  Throughout the trading day, the Optiver Defendants, per

Defendant Dowson or other traders under his direction, would adjust Defendants' orders –

**FILED UNDER SEAL**

canceling or modifying existing orders and placing new ones – often thereby increasing

Defendants' net long or short TAS position in a manner that resulted in Defendant Optiver US

LLC's accumulating a net long or short TAS position.

98.     By approximately 2:25 p.m., Defendants typically had managed to accumulate a

large net long or short position in TAS contracts for crude oil, heating oil and/or gasoline.

99.     Beginning at approximately 2:25 p.m. up until 2:27:59 p.m. (the "Pre-Close"),

Defendants typically executed a sizeable portion (averaging 20-30%) of the opposite direction

futures trades called for under Defendants' manipulative scheme.  That is, if Defendants'

gasoline TAS contract position was **net short**, Defendants then **purchased** an amount of

NYMEX gasoline futures contracts between approximately 2:25 and 2:27 p.m. that was roughly

20-30% of the total TAS contracts.  If Defendants were **net long** TAS gasoline contracts, then

Defendants **sold** between approximately 2:25 and 2:27 p.m. an amount of NYMEX gasoline

contracts that was approximately 20-30% of their TAS contracts.

100.    Then, between 2:28 PM and 2:30 PM, the "close", Defendants typically executed

the bulk of their position (averaging 50-80%) during this compressed period in order to

overwhelm the market and move prices by overpaying when Defendants purchased and

underselling when Defendants sold.  That is, if Defendants Gasoline TAS contract position was

**net short** Defendants **purchased** an amount of NYMEX Gasoline futures contracts between

2:28 and 2:30 that was roughly 60-80% of the total amount of Defendants' TAS contracts.  By

over-purchasing and overpaying, Defendants pushed the NYMEX Gasoline futures contract

prices progressively higher.  This made the overall VWAP for the closing period

higher.  Defendants' TAS Gasoline contracts were sold at this higher NYMEX VWAP price

which created a profit when the TAS contracts were offset against Defendants' NYMEX

**FILED UNDER SEAL**

Gasoline futures contracts. Those contracts were purchased BEFORE the class period at somewhat lower prices as well as during the closing period at prices approximating the VWAP; the average of Defendants' lower priced pre-Close purchases and Defendants purchases during the close was **less than** the VWAP thereby creating Defendants' profit from their artificial inflation of the VWAP during the Close.

101.    Defendants' ultimate goal was to ensure that there would be a significant and favorable price differential between the futures contracts Defendants traded during the Pre-Close and the settlement price, which would, in turn, determine the value of Defendant Optiver US LLC's TAS position.

102.    Because the futures contracts traded directly offset the TAS contracts, if Defendants could trade 20-30% of their futures contracts during the Pre-Close for a price more favorable than the settlement price and trade the remaining 70-80% of their futures contracts during the Close, for a weighted average price close to the settlement price, Defendants would achieve a significant profit overall.

103.    According to Defendants Optiver Holding B.V. and Randall Meijer, the Defendants' manipulative scheme was all "built on the idea that we can **control** the VWAP", that is, control the prices that make up the settlement price.

104.    All of Defendants' futures contracts trades during the Pre-Close and the Close were entered into Globex by traders under the supervision of the Optiver Defendants, per Defendants Optiver US LLC and Dowson or Defendants Optiver Holding B.V. and Meijer.

105.    Defendants agreed to maintain a software program which processed information about prices and quantities of trades being executed and showed a running calculation of the VWAP during the Close.

**FILED UNDER SEAL**

106.   **Defendants Execute Their Agreement to Manipulate Prices During March 2007**.  Defendants effectuated their agreement to manipulate through a variety of acts and practices that were intended to manipulate the prices of NYMEX futures contracts in Crude Oil, Heating Oil, and Gasoline.

107.   As alleged in more detail below, throughout March 2007, Defendants and other Optiver and Optiver VOF employees engaged in discussions and communications which reveal the details of how their plan was executed and reflect their manipulative intent on the 19 instances to, after having accumulated a significant net long or short TAS position, trade a significant volume of futures contracts in the opposite direction of the TAS position during the Pre-Close and Close.  The emails referenced herein were sent by the employees or agents of the Optiver Defendants, per Defendants Optiver, Optiver Holding, or Optiver VOF, as indicated in the email, in the course of regularly conducted business.

108.   Defendants agreed and intended to create artificial prices in Crude Oil, Heating Oil, and Gasoline futures contracts by executing large orders just before and during the Close.

109.   Pursuant thereto, throughout March 2007, Defendants repeatedly manipulated the price of the Crude Oil, Heating Oil, and Gasoline futures contracts by knowingly trading a manipulatively large number of futures contracts during the Pre-Close and the Close.

110.   Defendants knew that Optiver's standard futures trading during the Pre-Close and the Close would move prices to artificial levels.

111.   Throughout March 2007, Defendants and other Optiver, Optiver Holding, and Optiver VOF employees and agents engaged in numerous conversations in which they developed and refined their manipulative scheme.  The recordings referenced herein were created and maintained by Optiver in the course of its regularly conducted business.

**FILED UNDER SEAL**

112.    Many of these conversations evidence the Defendants' manipulative intent.

113.    Throughout March 2007, Defendants and other Optiver, Optiver Holding, and Optiver VOF employees and agents also engaged in hundreds of additional overt acts in furtherance of their manipulative strategy.

    **A.**    **March 2, 2007 Email from Defendant Dowson to Defendant Meijer Copying Defendant van Kempen Regarding Defendant Optiver's TAS Trading Strategy and Proper Apportionment of Trading of Futures Contracts**

114.    On Friday, March 2, 2007 at or about 3:31 p.m., Defendant Optiver US, per Defendant Dowson, in an email to Defendant Optiver Holding, per Defendant Meijer and copying Defendant van Kempen, outlined Defendants' strategy and the need to properly apportion the trading of futures contracts – and even trade for a loss during the Close – to control the movement of the price.

115.    In that email to Defendant Meijer, Defendant Dowson wrote:

> . . . **we are going to hammer the futures**.
>
> To hedge against "market risk" we have traded oil futures in the opposite direction.  This hedge cost $60k today.  We also carefully consider the percentage of futures to trade before [the two-minute close] (these are the ones that make the profit) and the ones we need to do during [the close] in order **to force the market down (the ones that cost money)**. . . .

Opti-US 000001 (March 2, 2007 email from C. Dowson to R. Meijer copying B. van Kempen) [emphasis supplied].

116.    In the March 2 email, Defendant Dowson expressed to Defendant Meijer and Defendant van Kempen his displeasure that Optiver's traders (in Amsterdam) were front-running his manipulative trades:

> I thought I would make you aware of what happened in the TAS's today.

**FILED UNDER SEAL**

Nick [Nicholas Stepanek] has made a tidy profit on his trading, close to $100k I expect. But I consider the way in which he did it to be both deceitful, and reckless. It also makes a mockery of the risk/reward profile that we (Ferhad [Mekic] and I) are trying to achieve.

Please ask Nick and Jan-Jaap to explain themselves (and why they would hedge all their deltas before the settlement time), before we discuss this on Monday. They will tell you of course that they have noticed (after we told them), that when someone sells TAS's, the future often go down during the settlement.  . . . .

Since **our colleagues in Amsterdam know that we are going to do the dirty work**, they simply trade their futures before hand, and make a big profit on them.

Is this what you want?

Opti-US 000001 (March 2, 2007 email from C. Dowson to R. Meijer copying B. van Kempen) [emphasis supplied].

117.    The Optiver Defendants, per Defendant Dowson, also discussed the trading activity during a phone call on or about March 5 at 10:55 a.m. CT with Edwin van der Kruk, a managing trader with Defendant Optiver VOF.  Transcript of 1281X1.wav (March 5, 2007 call from Edwin van der Kruk to Christopher Dowson), pp. 6 - 20.

118.    **March 2:  The Optiver Defendants' Trading In April 2007 NYMEX New York Harbor Gasoline Outright Futures and TAS Contracts**.

a.    On March 2, the Optiver Defendants, per Defendant Optiver US and its employees and agents, traded the NYMEX RB07J[3] TAS contract as follows:

| RB07J TAS Contract |
| --- |
|  |

---

[3] Contract calendar month codes:  J: April; K: May; M: June; N: July.  The commodity codes are NYMEX (a) light sweet crude oil (CL) futures contracts; (b) New York Harbor Heating Oil (HO) futures contracts; and (c) New York Harbor Gasoline (RB) futures contracts.  For example, the reference to "RB07J" refers to the NYMEX April 2007 New York Harbor Gasoline contract.

30

**FILED UNDER SEAL**

| March 2, 2007 | Contracts Bought | Purchase Price Range | Average Purchase Price | Contracts Sold | Sale Price Range | Average Sale Price | Net Total Contracts Bought or Sold |
|---|---|---|---|---|---|---|---|
| Before Pre-Close | 1165 | 1.9008 - 1.9017 | 1.90121 | (222) | 1.9013 - 1.9018 | 1.90173 | 943 |
| Pre-Close | | | | (50) | 1.9015 - 1.9015 | 1.9015 | (50) |
| | | | | | | | **893** |

    i.  Optiver accumulated a net position of 893 RB07J TAS contracts before and during the Pre-Close.

    ii.  Before the Pre-Close,[4] Optiver bought 1165 RB07J TAS contracts at prices from 1.9008 to 1.9017, averaging 1.90121; and sold (222) contracts at prices from 1.9013 to 1.9018, averaging 1.90173.  Optiver bought a net total of 943 RB07J TAS contracts.

    iii.  During the Pre-Close, Optiver sold (50) RB07J TAS contracts at 1.9015. Optiver sold a net total of (50) RB07J TAS contracts.

    b.  Also on March 2, the Optiver Defendants, per Defendant Optiver US and its employees and agents, traded the NYMEX RB07J outright futures contract as follows:

| **RB07J Outright Futures Contract** | | | | | | | |
|---|---|---|---|---|---|---|---|
| March 2, 2007 | Contracts Bought | Purchase Price Range | Average Purchase Price | Contracts Sold | Sale Price Range | Average Sale Price | Net Total Contracts Bought or Sold |
| Pre-Close | | | | (250) | 1.9143 – 1.9246 | 1.918687 | (250) |
| Close | 4 | 1.894 – 1.9114 | 1.903725 | (559) | 1.8946 – 1.9125 | 1.900996 | (555) |
| Post-Close | 6 | 1.8927 – 1.8999 | 1.89705 | (19) | 1.8915 – 1.9015 | 1.895989 | (13) |

---

[4] The time intervals are:  Trading day before Pre-Close:  6:00:00 p.m. (new session begins on prior day) – 2:24:59 p.m. EST; Pre-Close:  2:25:00 - 2:27:59 p.m. EST; Close:  2:28:00 – 2:30:00 p.m. EST; and Post-Close:  2:30:01 p.m. EST to 5:59:59 p.m. EST.

**FILED UNDER SEAL**

| | | | | | | | (818) |
|---|---|---|---|---|---|---|---|

      i.     Optiver sold a net total of (818) RB07J outright futures contracts in the opposite direction of its corresponding accumulated net TAS position, selling (250) outrights (30.56%) during the Pre-Close and (555) outrights (67.84%) during the Close.  Optiver sold its remaining (13) outrights (1.58%) after the Close.

      ii.     During the Pre-Close, Optiver sold (250) RB07J outright futures contracts at prices from 1.9143 to 1.9246, averaging 1.918687.  Optiver sold a net total of (250) RB07J outright futures contracts.

      iii.     During the Close, Optiver bought 4 RB07J outright futures contracts at prices from 1.894 to 1.9114, averaging 1.903725; and sold (559) contracts at prices from 1.8946 to 1.9125, averaging 1.900996.  Optiver sold a net total of (555) RB07J outright futures contracts.

      iv.     During the Post-Close, Optiver bought 6 RB07J outright futures contracts at prices from 1.8927 to 1.8999, averaging 1.89705; and sold (19) contracts at prices from 1.8915 to 1.9015, averaging 1.895989.  Optiver sold a net total of (13) RB07J outright futures contracts.

      c.     **Daily Price Movements in NYMEX Outright Futures Contracts**.  On March 2, the actual difference and percentage change between the midpoint bid-ask prices immediately before the Pre-Close and bid-ask prices after the settlement for the front, second and third month (*i.e.*, April ("J"), May ("K") and June ("M")) NYMEX RB07 outright futures contracts were as follows:

| NYMEX RB07 Outright Futures Contracts | | | | | | |
|---|---|---|---|---|---|---|
| | Bid-Ask Midpoint Price Immediately Before Pre-Close | | | Bid-Ask Price 15 Minutes After Settlement | | |
| March 2, 2007 | Front Month | 2nd Month | 3rd Month | Front Month | 2nd Month | 3rd Month |

**FILED UNDER SEAL**

|  | 1.9102 | 1.9072 | 1.9056 | 1.90665 | 1.9045 | 1.90265 |
|---|---|---|---|---|---|---|
| Actual difference |  |  |  | (0.0239) | (0.0193) | (0.01785) |
| Percentage Change |  |  |  | (1.24195) | (1.00825) | (0.93524) |

119. **March 2:  The Optiver Defendants' Trading In April 2007 NYMEX New York Harbor Heating Oil Outright Futures and TAS Contracts**.

   a.  On March 2, the Optiver Defendants, per Defendant Optiver US and its employees and agents, traded the NYMEX HO07J TAS contract as follows:

| HO07J TAS Contract | | | | | | | |
|---|---|---|---|---|---|---|---|
| March 2, 2007 | Contracts Bought | Purchase Price Range | Average Purchase Price | Contracts Sold | Sale Price Range | Average Sale Price | Net Total Contracts Bought or Sold |
| Before Pre-Close | 131 | 1.7682 - 1.7683 | 1.76820 | (131) | 1.7683 - 1.7684 | 1.76830 | 0 |
|  |  |  |  |  |  |  | 0 |

   i.  Before the Pre-Close, Optiver bought 131 HO07J TAS contracts at prices from 1.7682 to 1.7683, averaging 1.7682; and sold (131) contracts at prices from 1.7683 to 1.7684, averaging 1.7683.  Optiver bought/sold a net total of 0 HO07J TAS contracts.

   b.  Also on March 2, the Optiver Defendants, per Defendant Optiver US and its employees and agents, traded the NYMEX HO07J outright futures contract as follows:

| HO07J Outright Futures Contract | | | | | | | |
|---|---|---|---|---|---|---|---|
| March 2, 2007 | Contracts Bought | Purchase Price Range | Average Purchase Price | Contracts Sold | Sale Price Range | Average Sale Price | Net Total Contracts Bought or Sold |
| Pre-Close | 2 | 1.7763 - 1.7764 | 1.77635 | (1) | 1.7774 - 1.7774 | 1.7774 | 1 |

**FILED UNDER SEAL**

| Close | 8 | 1.7657 - 1.7702 | 1.76791 | (10) | 1.7665 - 1.7712 | 1.76868 | (2) |
| Post-Close | 12 | 1.765 - 1.7675 | 1.7657 | (26) | 1.7596 - 1.7682 | 1.76556 | (14) |
| | | | | | | | (15) |

       i.     Optiver traded a net total of (15) HO07J outright futures contracts, trading 1 outright (6.66%) during the Pre-Close and (2) outrights (13.33%) during the Close. Optiver traded its remaining (14) outrights after the Close.

       ii.    During the Pre-Close, Optiver bought 2 HO07J outright futures contracts at prices from 1.7763 to 1.7764, averaging 1.77635; and sold (1) contract at 1.7774. Optiver bought a net total of 1 HO07J outright futures contract.

       iii.   During the Close, Optiver bought 8 HO07J outright futures contracts at prices from 1.7657 to 1.7702, averaging 1.76791; and sold (10) contracts at prices from 1.7665 to 1.7712, averaging 1.76868. Optiver sold a net total of (2) HO07J outright futures contracts.

       iv.   During the Post-Close, Optiver bought 12 HO07J outright futures contracts at prices from 1.765 to 1.7675, averaging 1.7657; and sold (26) contracts at prices from 1.7596 to 1.7682, averaging 1.76556. Optiver sold a net total of (14) HO07J outright futures contracts.

       c.    **Daily Price Movements in NYMEX Outright Futures Contracts**. On March 2, the actual difference and percentage change between the midpoint bid-ask prices immediately before the Pre-Close and bid-ask prices after the settlement for the front, second and third month (*i.e.*, April ("J"), May ("K") and June ("M")) NYMEX HO07 outright futures contracts were as follows:

| NYMEX HO07 Outright Futures Contracts | | |
| --- | --- | --- |
| | Bid-Ask Midpoint Price Immediately Before Pre-Close | Bid-Ask Price 15 Minutes After Settlement |

**FILED UNDER SEAL**

| March 2, 2007 | Front Month | 2nd Month | 3rd Month | Front Month | 2nd Month | 3rd Month |
|---|---|---|---|---|---|---|
| | 1.77585 | 1.77295 | 1.77605 | 1.76785 | 1.7646 | 1.76785 |
| Actual difference | | | | (0.008) | (0.00835) | (0.0082) |
| Percentage Change | | | | (0.45049) | (0.47097) | (0.4617) |

120.    On or about Monday, March 5, 2007, Defendant Optiver was experiencing difficulty getting its TAS orders into the Globex system in front of other traders and was looking for a way to remedy that problem.

121.    Defendant Optiver's traders had frequent discussions about improving the "Hammer" to make sure Optiver's TAS orders were getting into the Globex system first (before those of other traders).

122.    **March 6:  The Optiver Defendants' Trading In April 2007 NYMEX Light Sweet Crude Oil Outright Futures and TAS Contracts**.

a.    On Tuesday, March 6, the Optiver Defendants, per Defendant Optiver US and its employees and agents, traded the NYMEX CL07J TAS contract as follows:

| CL07J TAS Contract | | | | | | | |
|---|---|---|---|---|---|---|---|
| March 6, 2007 | Contracts Bought | Purchase Price Range | Average Purchase Price | Contracts Sold | Sale Price Range | Average Sale Price | Net Total Contracts Bought or Sold |
| Before Pre-Close | 1 | 60.7 – 60.7 | 60.7 | (821) | 60.69 - 60.71 | 60.70117 | (820) |
| Pre-Close | | | | (480) | 60.71 - 60.71 | 60.71 | (480) |
| | | | | | | | **(1300)** |

i.    Optiver accumulated a net position of (1300) CL07J TAS contracts before and during the Pre-Close.

**FILED UNDER SEAL**

ii.     Before the Pre-Close, Optiver bought 1 CL07J TAS contract at 60.7; and sold (821) contracts at prices from 60.69 to 60.71, averaging 60.70117.  Optiver sold a net total of (820) CL07J TAS contracts.

iii.    During the Pre-Close, Optiver sold (480) CL07J TAS contracts at 60.71. Optiver sold a net total of (480) CL07J TAS contracts.

b.     Also on March 6, the Optiver Defendants, per Defendant Optiver US and its employees and agents, traded the NYMEX CL07J outright futures contract as follows:

| CL07J Outright Futures Contract | | | | | | | |
|---|---|---|---|---|---|---|---|
| March 6, 2007 | Contracts Bought | Purchase Price Range | Average Purchase Price | Contracts Sold | Sale Price Range | Average Sale Price | Net Total Contracts Bought or Sold |
| Pre-Close | 492 | 60.38 - 60.63 | 60.51489 | (2) | 60.57 - 60.6 | 60.585 | 490 |
| Close | 925 | 60.63 - 60.71 | 60.68269 | (10) | 60.69 - 60.69 | 60.69 | 915 |
| Post-Close | 18 | 60.65 - 60.71 | 60.68 | (6) | 60.68 - 60.71 | 60.7 | 12 |
| | | | | | | | 1417 |

i.     Optiver traded a net total of 1417 CL07J outright futures contracts in the opposite direction of its corresponding accumulated net TAS position, trading 490 outrights (34.58%) during the Pre-Close and 915 outrights (64.57%) during the Close.  Optiver traded its remaining 12 outrights (0.84%) after the Close.

ii.    During the Pre-Close, Optiver bought 492 CL07J outright futures contracts at prices from 60.38 to 60.63, averaging 60.51489; and sold (2) contracts at prices from 60.57 to 60.6, averaging 60.585.  Optiver bought a net total of 490 CL07J outright futures contracts during the Pre-Close.

36
**FILED UNDER SEAL**

iii.    During the Close, Optiver bought 925 CL07J outright futures contracts at prices from 60.63 to 60.71, averaging 60.68269; and sold (10) contracts at prices from 60.69 to 60.69, averaging 60.69.  Optiver bought a net total of 915 CL07J outright futures contracts during the Close.

iv.    During the Post-Close, Optiver bought 18 CL07J outright futures contracts at prices from 60.65 to 60.71, averaging 60.68; and sold (6) contracts at prices from 60.68 to 60.71, averaging 60.7.  Optiver bought a net total of 12 CL07J outright futures contracts during the Post-Close.

c.    **Daily Price Movements in NYMEX Outright Futures Contracts**.  On March 6, the actual difference and percentage change between the midpoint bid-ask prices immediately before the Pre-Close and bid-ask prices after the settlement for the front, second and third month (*i.e.*, April ("J"), May ("K") and June ("M")) NYMEX CL07 outright futures contracts were as follows:

| NYMEX CL07 Outright Futures Contracts | | | | | |
|---|---|---|---|---|---|
| | Bid-Ask Midpoint Price Immediately Before Pre-Close | | | Bid-Ask Price 15 Minutes After Settlement | | |
| March 6, 2007 | Front Month | 2nd Month | 3rd Month | Front Month | 2nd Month | 3rd Month |
| | 60.39 | 61.755 | 62.695 | 60.715 | 62.07 | 62.985 |
| Actual difference | | | | 0.325 | 0.315 | 0.29 |
| Percentage Change | | | | 0.538169 | 0.51008 | 0.462557 |

123.    **March 6:  The Optiver Defendants' Trading In April 2007 NYMEX New York Harbor Gasoline Outright Futures and TAS Contracts**.

a.    On March 6, the Optiver Defendants, per Defendant Optiver US and its employees and agents, traded the NYMEX RB07J TAS contract as follows:

| RB07J TAS Contract | | | | | | | |
|---|---|---|---|---|---|---|---|
| March 6, 2007 | Contracts Bought | Purchase Price Range | Average Purchase Price | Contracts Sold | Sale Price Range | Average Sale Price | Net Total Contracts Bought or Sold |
| Before Pre-Close | 180 | 1.8529 - 1.8533 | 1.8532 | (669) | 1.8534 - 1.8535 | 1.85341 | (489) |
| Pre-Close | 10 | 1.8528 - 1.8528 | 1.8528 | | | | 10 |
| | | | | | | | **(479)** |

        i.      Optiver accumulated a net position of (479) RB07J TAS contracts before

and during the Pre-Close.

        ii.      Before the Pre-Close, Optiver bought 180 RB07J TAS contracts at prices

from 1.8529 to 1.8533, averaging 1.8532; and sold (669) contracts at prices from 1.8534 to

1.8535, averaging 1.85341.  Optiver sold a net total of (489) RB07J TAS contracts before the

Pre-Close.

        iii.      During the Pre-Close, Optiver bought 10 RB07J TAS contracts at 1.8528.

Optiver bought a net total of 10 RB07J TAS contracts during the Pre-Close.

        b.      Also on March 6, the Optiver Defendants, per Defendant Optiver US and

its employees and agents, traded the NYMEX RB07J outright futures contract as follows:

| RB07J Outright Futures Contract | | | | | | | |
|---|---|---|---|---|---|---|---|
| March 6, 2007 | Contracts Bought | Purchase Price Range | Average Purchase Price | Contracts Sold | Sale Price Range | Average Sale Price | Net Total Contracts Bought or Sold |
| Pre-Close | 193 | 1.8432 - 1.8502 | 1.84655 | | | | 193 |
| Close | 234 | 1.8513 - 1.8547 | 1.85326 | | | | 234 |
| Post-Close | 2 | 1.8516 - 1.8525 | 1.85205 | (1) | 1.8515 - 1.8515 | 1.8515 | 1 |
| | | | | | | | **428** |

**FILED UNDER SEAL**

       i.     Optiver traded a net total of 428 RB07J outright futures contracts in the opposite direction of its corresponding accumulated net TAS position, trading 193 outrights (45.09%) during the Pre-Close and 234 outrights (54.67%) during the Close.  Optiver traded its remaining 1 outright (0.23%) after the Close.

       ii.    During the Pre-Close, Optiver bought 193 RB07J outright futures contracts at prices from 1.8432 to 1.8502, averaging 1.84655.  Optiver bought a net total of 193 RB07J outright futures contracts.

       iii.   During the Close, Optiver bought 234 RB07J outright futures contracts at prices from 1.8513 to 1.8547, averaging 1.85326.  Optiver bought a net total of 234 RB07J outright futures contracts.

       iv.    During the Post-Close, Optiver bought 2 RB07J outright futures contracts at prices from 1.8516 to 1.8525, averaging 1.85205; and sold (1) contract at 1.8515.  Optiver bought a net total of 1 RB07J outright futures contract.

       c.    **Daily Price Movements in NYMEX Outright Futures Contracts**.  On March 6, the actual difference and percentage change between the midpoint bid-ask prices immediately before the Pre-Close and bid-ask prices after the settlement for the front, second and third month (*i.e.*, April ("J"), May ("K") and June ("M")) NYMEX RB07 outright futures contracts were as follows:

| NYMEX RB07 Outright Futures Contracts | | | | | | |
|---|---|---|---|---|---|---|
| | Bid-Ask Midpoint Price Immediately Before Pre-Close | | | Bid-Ask Price 15 Minutes After Settlement | | |
| March 6, 2007 | Front Month | 2nd Month | 3rd Month | Front Month | 2nd Month | 3rd Month |
| | 1.8444 | 1.8487 | 1.854 | 1.85325 | 1.85775 | 1.86325 |
| Actual difference | | | | 0.00885 | 0.00905 | 0.00925 |

| | | | | 0.479831 | 0.489533 | 0.498921 |
|---|---|---|---|---|---|---|
| Percentage Change | | | | | | |

124.   **March 6:  The Optiver Defendants' Trading In April 2007 NYMEX New York Harbor Heating Oil Outright Futures and TAS Contracts**.

a.   On March 6, the Optiver Defendants, per Defendant Optiver US and its employees and agents, traded the NYMEX HO07J TAS contract as follows:

| HO07J TAS Contract | | | | | | | |
|---|---|---|---|---|---|---|---|
| March 6, 2007 | Contracts Bought | Purchase Price Range | Average Purchase Price | Contracts Sold | Sale Price Range | Average Sale Price | Net Total Contracts Bought or Sold |
| Before Pre-Close | 8 | 1.7472 - 1.7472 | 1.7472 | (66) | 1.7473 - 1.7476 | 1.74749 | (58) |
| Pre-Close | | | | (136) | 1.7474 - 1.7475 | 1.74746 | (136) |
| | | | | | | | **(194)** |

i.   Optiver accumulated a net position of (194) HO07J TAS contracts before and during the Pre-Close.

ii.   Before the Pre-Close, Optiver bought 8 HO07J TAS contracts at 1.7472; and sold (66) contracts at prices from 1.7473 to 1.7476, averaging 1.74749.  Optiver sold a net total of (58) HO07J TAS contracts.

iii.   During the Pre-Close, Optiver sold (136) HO07J TAS contracts at prices from 1.7474 to 1.7475, averaging 1.74746.  Optiver sold a net total of (136) HO07J TAS contracts.

b.   Also on March 6, the Optiver Defendants, per Defendant Optiver US and its employees and agents, traded the NYMEX HO07J outright futures contract as follows:

| HO07J Outright Futures Contract |
|---|

**FILED UNDER SEAL**

| March 6, 2007 | Contracts Bought | Purchase Price Range | Average Purchase Price | Contracts Sold | Sale Price Range | Average Sale Price | Net Total Contracts Bought or Sold |
|---|---|---|---|---|---|---|---|
| Pre-Close | 71 | 1.7422 - 1.7447 | 1.743383 | (2) | 1.7405 - 1.745 | 1.74275 | 69 |
| Close | 117 | 1.7456 - 1.7478 | 1.74736 | (2) | 1.7467 - 1.7477 | 1.7472 | 115 |
| Post-Close | 4 | 1.748 - 1.7495 | 1.74877 | (3) | 1.7486 - 1.7496 | 1.74926 | 1 |
| | | | | | | | **185** |

      i.    Optiver traded a net total of 185 HO07J outright futures contracts in the opposite direction of its corresponding accumulated net TAS position, trading 69 outrights (37.29%) during the Pre-Close and 115 outrights (62.16%) during the Close. Optiver traded its remaining 1 outright (0.54%) after the Close.

      ii.    During the Pre-Close, Optiver bought 71 HO07J outright futures contracts at prices from 1.7422 to 1.7447, averaging 1.743383; and sold (2) contracts at prices from 1.7405 to 1.745, averaging 1.74275. Optiver bought a net total of 69 HO07J outright futures contracts.

      iii.    During the Close, Optiver bought 117 HO07J outright futures contracts at prices from 1.7456 to 1.7478, averaging 1.74736; and sold (2) contracts at prices from 1.7467 to 1.7477, averaging 1.7472. Optiver bought a net total of 115 HO07J outright futures contracts.

      iv.    During the Post-Close, Optiver bought 4 HO07J outright futures contracts at prices from 1.748 to 1.7495, averaging 1.74877; and sold (3) contracts at prices from 1.7486 to 1.7496, averaging 1.74926. Optiver bought a net total of 1 HO07J outright futures contract.

      c.    **Daily Price Movements in NYMEX Outright Futures Contracts**. On March 6, the actual difference and percentage change between the midpoint bid-ask prices immediately before the Pre-Close and bid-ask prices after the settlement for the front, second and

third month (*i.e.*, April ("J"), May ("K") and June ("M")) NYMEX HO07 outright futures

contracts were as follows:

| NYMEX HO07 Outright Futures Contracts | | | | | |
|---|---|---|---|---|---|
| 125.  X<br>March 6,<br>2007 | Bid-Ask Midpoint Price<br>Immediately Before Pre-Close | | | Bid-Ask Price 15 Minutes After<br>Settlement | | |
| | Front<br>Month | 2nd<br>Month | 3rd<br>Month | Front<br>Month | 2nd<br>Month | 3rd<br>Month |
| | 1.74055 | 1.73865 | 1.7444 | 1.7501 | 1.7479 | 1.75335 |
| Actual<br>difference | | | | 0.00955 | 0.00925 | 0.00895 |
| Percentage<br>Change | | | | 0.548677 | 0.532022 | 0.51307 |

126.    On Wednesday, March 7, at approximately 3:21 a.m. CT, the Optiver Defendants,

per Defendant Meijer, wrote to Defendant Dowson, copying Defendant van Kempen:

> I talked to Jan-Jaap and Nick about the TAS's.
> They agreed to doing them from l spot being the US.
>
> You can then raise your limits to 1000 per commodity (this equals app. 75 min
> [million] per underlying right?)
>
> Please respect those limits.
> **When we gain experience and become more certain that we can influence VWAP
> I'm sure we can raise further.** . .

March 7, 2007 (3:21 a.m.) email from R. Meijer to C. Dowson copying B. van Kempen (replying

to March 7, 2007 (23:00) email from C. Dowson to R. Meijer copying B. van Kempen)

[emphasis supplied].

**B.  March 8, 2007 Telephone Call Between Defendants Meijer and Dowson**

127.    On March 8, 2007, the Optiver Defendants, per Defendants Dawson and Meijer,

discussed the need for market power to move prices in the manipulative scheme.

> Dowson      . . . I mean basically it depends on the product actually
> and for us for the oil, for the WTI, we've really not been
> trying to bully it.  Normally you don't have some like
> big counter party there is enough liquidity there that

**FILED UNDER SEAL**

|  | basically **the worse thing that can possibly happen to you is that you try to bully it and you run out of power.** |
|---|---|
| Meijer | (laughter) and then the market just moves, I mean, apart from what you were doing. Of course, a thousand futures is at least something during your 3rd period but it's not like anything huge. |
| Dowson | So basically for us - if you compare that to the WTI, what we do with that, we never try and really pummel it anywhere. We never really try and push it, and so that's not the one where- where we're sort of using our scheme . . . . |
| Dowson | . . . **When we really made our good money it's come from in the products where -- then you're talking about normal trading during those 2 minutes is 300 futures or 400 futures, something like that.** If you have a thousand to do then you (inaudible). |

Transcript of 128XCP.wav (March 8, 2007 call from Christopher Dowson to Randal Meijer), pp.

22-24 [emphasis supplied].

128.    The Optiver Defendants, per Defendants Dowson and Meijer, discussed the cover

story, what they called the "fairy story," they planned to use in the event that Optiver were

investigated for "manipulation."

| Dowson | This is a bit of a thing I also have over here as well - what I like being the-- sort of 99 bid at 101 as well at least is that you got a good uh – I mean I suppose even if you sell even you could still say -- look we think we can get edge and trade in the same sector, it doesn't matter - I was just thinking more about **if people come to you with stories about why you manipulated the market** and things like this. |
|---|---|
| Meijer | **Yeah, okay, then you can still say yeah because we can still make some from scalping -- but you actually don't really manipulate because you actually have an order that you just need to close your position-** |
| Dowson | **We just, we can execute better than VW AP, that's why we do it.** |
| Meijer | Exactly, that's what we think at least (chuckling). |
| Dowson | **That's a fairy story.** . . . |

**FILED UNDER SEAL**

Transcript of 128XCP.wav (March 8, 2007 call from Christopher Dowson to Randal Meijer), pp. 25-26 [emphasis supplied].

129.   **March 8:  The Optiver Defendants' Trading In April 2007 NYMEX New York Harbor Gasoline Outright Futures and TAS Contracts**.

a.   On March 8, the Optiver Defendants, per Defendant Optiver US and its employees and agents, traded the NYMEX RB07J TAS contract as follows:

| RB07J TAS Contract | | | | | | | |
|---|---|---|---|---|---|---|---|
| March 8, 2007 | Contracts Bought | Purchase Price Range | Average Purchase Price | Contracts Sold | Sale Price Range | Average Sale Price | Net Total Contracts Bought or Sold |
| Before Pre-Close | 546 | 1.926 - 1.9261 | 1.92602 | (10) | 1.9266 - 1.9266 | 1.9266 | 536 |
| Pre-Close | | | | (2) | 1.9268 - 1.9268 | 1.9268 | (2) |
| | | | | | | | **534** |

i.   Optiver accumulated a net position of 534 RB07J TAS contracts before and during the Pre-Close.

ii.   Before the Pre-Close, Optiver bought 546 RB07J TAS contracts at prices from 1.926 to 1.9261, averaging 1.92602; and sold (10) contracts at 1.9266.  Optiver bought a net total of 536 RB07J TAS contracts.

iii.   During the Pre-Close, Optiver sold (2) RB07J TAS contracts at 1.9268. Optiver sold a net total of (2) RB07J TAS contracts.

b.   Also on March 8, the Optiver Defendants, per Defendant Optiver US and its employees and agents, traded the NYMEX RB07J outright futures contract as follows:

| RB07J Outright Futures Contract |
|---|

| March 8, 2007 | Contracts Bought | Purchase Price Range | Average Purchase Price | Contracts Sold | Sale Price Range | Average Sale Price | Net Total Contracts Bought or Sold |
|---|---|---|---|---|---|---|---|
| Pre-Close | 1 | 1.9319 - 1.9319 | 1.9319 | (107) | 1.9271 - 1.9336 | 1.92858 | (106) |
| Close | | | | (406) | 1.9248 - 1.9286 | 1.92586 | (406) |
| Post-Close | 1 | 1.9238 - 1.9238 | 1.9238 | (9) | 1.9257 - 1.926 | 1.92575 | (8) |
| | | | | | | | **(520)** |

         i.     Optiver traded a net total of (520) RB07J outright futures contracts in the opposite direction of its corresponding accumulated net TAS position, trading (106) outrights (20.38%) during the Pre-Close and (406) outrights (78.07%) during the Close. Optiver traded its remaining (8) outrights (1.53%) after the Close.

         ii.     During the Pre-Close, Optiver bought 1 RB07J outright futures contract at 1.9319; and sold (107) contracts at prices from 1.9271 to 1.9336, averaging 1.92858. Optiver sold a net total of (106) RB07J outright futures contracts.

         iii.     During the Close, Optiver sold (406) RB07J outright futures contracts at prices from 1.9248 to 1.9286, averaging 1.92586. Optiver sold a net total of (406) RB07J outright futures contracts.

         iv.     During the Post-Close, Optiver bought 1 RB07J outright futures contract at 1.9238; and sold (9) contracts at prices from 1.9257 to 1.926, averaging 1.92575. Optiver sold a net total of (8) RB07J outright futures contracts.

         c.     **Daily Price Movements in NYMEX Outright Futures Contracts**. On March 8, the actual difference and percentage change between the midpoint bid-ask prices immediately before the Pre-Close and bid-ask prices after the settlement for the front, second and

third month (*i.e.*, April ("J"), May ("K") and June ("M")) NYMEX RB07 outright futures contracts were as follows:

| NYMEX RB07 Outright Futures Contracts | | | | | | |
|---|---|---|---|---|---|---|
| | Bid-Ask Midpoint Price Immediately Before Pre-Close | | | Bid-Ask Price 15 Minutes After Settlement | | |
| March 8, 2007 | Front Month | 2nd Month | 3rd Month | Front Month | 2nd Month | 3rd Month |
| | 1.9326 | 1.9213 | 1.9184 | 1.92675 | 1.9146 | 1.9109 |
| Actual difference | | | | (0.00585) | (0.0067) | (0.0075) |
| Percentage Change | | | | (0.3027) | (0.34872) | (0.39095) |

130.    **March 8:  The Optiver Defendants' Trading In April 2007 NYMEX Light Sweet Crude Oil Outright Futures and TAS Contracts.**[5]

a.      On March 8, the Optiver Defendants, per Defendant Optiver US and its employees and agents, traded the NYMEX CL07J TAS contract as follows:

| CL07J TAS Contract | | | | | | | |
|---|---|---|---|---|---|---|---|
| March 8, 2007 | Contracts Bought | Purchase Price Range | Average Purchase Price | Contracts Sold | Sale Price Range | Average Sale Price | Net Total Contracts Bought or Sold |
| Before Pre-Close | 1 | 61.65 – 61.65 | 61.65 | (410) | 61.64 - 61.65 | 61.64909 | (409) |
| Pre-Close | 221 | 61.63 - 61.64 | 61.636 | | | | 221 |
| | | | | | | | **(188)** |

i.      Optiver accumulated a net position of (188) CL07J TAS contracts before and during the Pre-Close.

---

[5] On March 8, Optiver also traded in May and June 2007 Light Sweet Crude Oil futures.

**FILED UNDER SEAL**

      ii.    Before the Pre-Close, Optiver bought 1 CL07J TAS contract at 61.65; and sold (410) contracts at prices from 61.64 to 61.65, averaging 61.64909.  Optiver sold a net total of (409) CL07J TAS contracts.

      iii.    During the Pre-Close, Optiver bought 221 CL07J TAS contracts at prices from 61.63 to 61.64, averaging 61.636.  Optiver bought a net total of 221 CL07J TAS contracts.

      b.    Also on March 8, the Optiver Defendants, per Defendant Optiver US and its employees and agents, traded the NYMEX CL07J outright futures contract as follows:

| CL07J Outright Futures Contract | | | | | | | |
| March 8, 2007 | Contracts Bought | Purchase Price Range | Average Purchase Price | Contracts Sold | Sale Price Range | Average Sale Price | Net Total Contracts Bought or Sold |
| --- | --- | --- | --- | --- | --- | --- | --- |
| Pre-Close | 98 | 61.58 - 61.73 | 61.65354 | (2) | 61.56 - 61.58 | 61.57 | 96 |
| Close | 226 | 61.61 - 61.68 | 61.62967 | (3) | 61.63 - 61.64 | 61.63666 | 223 |
| Post-Close | 1 | 61.6 – 61.6 | 61.6 | (7) | 61.62 - 61.68 | 61.65 | (6) |
| | | | | | | | 313 |

      i.    Optiver traded a net total of 313 CL07J outright futures contracts in the opposite direction of its corresponding accumulated net TAS position, trading 96 outrights (30.67%) during the Pre-Close and 223 outrights (71.24%) during the Close.  Optiver traded (6) outrights after the Close.

      ii.    During the Pre-Close, Optiver bought 98 CL07J outright futures contracts at prices from 61.58 to 61.73, averaging 61.65354; and sold (2) contracts at prices from 61.56 to 61.58, averaging 61.57.  Optiver bought a net total of 96 CL07J outright futures contracts.

FILED UNDER SEAL

        iii.     During the Close, Optiver bought 226 CL07J outright futures contracts at prices from 61.61 to 61.68, averaging 61.62967; and sold (3) contracts at prices from 61.63 to 61.64, averaging 61.63666.  Optiver bought a net total of 223 CL07J outright futures contracts.

        iv.     During the Post-Close, Optiver bought 1 CL07J outright futures contract at 61.6; and sold (7) contracts at prices from 61.62 to 61.68, averaging 61.65.  Optiver sold a net total of (6) CL07J outright futures contracts.

        c.     **Daily Price Movements in NYMEX Outright Futures Contracts**.  On March 8, the actual difference and percentage change between the midpoint bid-ask prices immediately before the Pre-Close and bid-ask prices after the settlement for the front, second and third month (*i.e.*, April ("J"), May ("K") and June ("M")) NYMEX CL07 outright futures contracts were as follows:

| NYMEX CL07 Outright Futures Contracts | | | | | | |
|---|---|---|---|---|---|---|
| | Bid-Ask Midpoint Price Immediately Before Pre-Close | | | Bid-Ask Price 15 Minutes After Settlement | | |
| March 8, 2007 | Front Month | 2nd Month | 3rd Month | Front Month | 2nd Month | 3rd Month |
| | 61.715 | 63.29 | 64.27 | 61.585 | 63.155 | 64.14 |
| Actual difference | | | | (0.13) | (0.135) | (0.13) |
| Percentage Change | | | | (0.21065) | (0.2133) | (0.20227) |

131.     **March 8:  The Optiver Defendants' Trading In May 2007 NYMEX Light Sweet Crude Oil Outright Futures and TAS Contracts**.[6]

        a.     On March 8, the Optiver Defendants, per Defendant Optiver US and its employees and agents, traded the NYMEX CL07K TAS contract as follows:

| **CL07K TAS Contract** |
|---|

---

[6] On March 8, Optiver also traded in May and June 2007 Light Sweet Crude Oil futures.

**FILED UNDER SEAL**

| March 8, 2007 | Contracts Bought | Purchase Price Range | Average Purchase Price | Contracts Sold | Sale Price Range | Average Sale Price | Net Total Contracts Bought or Sold |
|---|---|---|---|---|---|---|---|
| Before Pre-Close | 100 | 63.2 – 63.2 | 63.2 | (100) | 63.21 - 63.21 | 63.21 | 0 |
| | | | | | | | 0 |

> i.      Before the Pre-Close, Optiver bought 100 CL07K TAS contracts at 63.2; and sold (100) contracts at 63.21.  Optiver bought/sold a net total of 0 CL07K TAS contracts.

> b.      Also on March 8, the Optiver Defendants, per Defendant Optiver US and its employees and agents, traded the NYMEX CL07K outright futures contract as follows:

| CL07K Outright Futures Contract | | | | | | | |
|---|---|---|---|---|---|---|---|
| March 8, 2007 | Contracts Bought | Purchase Price Range | Average Purchase Price | Contracts Sold | Sale Price Range | Average Sale Price | Net Total Contracts Bought or Sold |
| Close | | | | (3) | 63.21 - 63.26 | 63.23 | (3) |
| Post-Close | | | | (1) | 63.21 - 63.21 | 63.21 | (1) |
| | | | | | | | (4) |

> i.      During the Close, Optiver sold (3) CL07K outright futures contracts at prices from 63.21 to 63.26, averaging 63.23.  Optiver sold a net total of (3) CL07K outright futures contracts.

> ii.      During the Post-Close, Optiver sold (1) CL07K outright futures contract at 63.21.  Optiver sold a net total of (1) CL07K outright futures contracts.

> c.      **Daily Price Movements in NYMEX Outright Futures Contracts**.  *See* ¶ 131(c) *infra*.

132.    **March 9:  The Optiver Defendants' Trading In April 2007 NYMEX New York Harbor Gasoline Outright Futures and TAS Contracts**.

    a.    On March 9, the Optiver Defendants, per Defendant Optiver US and its employees and agents, traded the NYMEX RB07J TAS contract as follows:

| RB07J TAS Contract | | | | | | | |
|---|---|---|---|---|---|---|---|
| March 9, 2007 | Contracts Bought | Purchase Price Range | Average Purchase Price | Contracts Sold | Sale Price Range | Average Sale Price | Net Total Contracts Bought or Sold |
| Before Pre-Close | 700 | 1.9019 - 1.902 | 1.90197 | (1630) | 1.902 - 1.9022 | 1.90212 | (930) |
| Pre-Close | | | | (50) | 1.9022 - 1.9022 | 1.9022 | (50) |
| | | | | | | | **(980)** |

    i.    Optiver accumulated a net position of (980) RB07J TAS contracts before and during the Pre-Close.

    ii.    Before the Pre-Close, Optiver bought 700 RB07J TAS contracts at prices from 1.9019 to 1.902, averaging 1.90197; and sold (1630) contracts at prices from 1.902 to 1.9022, averaging 1.90212.  Optiver sold a net total of (930) RB07J TAS contracts.

    iii.    During the Pre-Close, Optiver sold (50) RB07J TAS contracts at 1.9022.  Optiver sold a net total of (50) RB07J TAS contracts.

    b.    Also on March 9, the Optiver Defendants, per Defendant Optiver US and its employees and agents, traded the NYMEX RB07J outright futures contract as follows:

| RB07J Outright Futures Contract | | | | | | | |
|---|---|---|---|---|---|---|---|
| March 9, 2007 | Contracts Bought | Purchase Price Range | Average Purchase Price | Contracts Sold | Sale Price Range | Average Sale Price | Net Total Contracts Bought or Sold |
| Pre-Close | 245 | 1.899 – 1.902 | 1.90060 | | | | 245 |

**FILED UNDER SEAL**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Close | 716 | 1.9005 – 1.904 | 1.90244 | (6) | 1.9013 - 1.9013 | 1.9013 | 710 |
| Post-Close | 3 | 1.896 – 1.896 | 1.896 | (5) | 1.895 - 1.8974 | 1.89666 | (2) |
| | | | | | | | **953** |

       i.    Optiver traded a net total of 951 RB07J outright futures contracts in the opposite direction of its corresponding accumulated net TAS position, trading 245 outrights (25.76%) during the Pre-Close and 710 outrights (74.65%) during the Close. Optiver traded (2) outrights after the Close.

       ii.    During the Pre-Close, Optiver bought 245 RB07J outright futures contracts at prices from 1.899 to 1.902, averaging 1.9006. Optiver bought a net total of 245 RB07J outright futures contracts.

       iii.    During the Close, Optiver bought 716 RB07J outright futures contracts at prices from 1.9005 to 1.904, averaging 1.90244; and sold (6) contracts at 1.9013. Optiver bought a net total of 710 RB07J outright futures contracts.

       iv.    During the Post-Close, Optiver bought 3 RB07J outright futures contracts at 1.896; and sold (5) contracts at prices from 1.895 to 1.8974, averaging 1.89666. Optiver sold a net total of (2) RB07J outright futures contracts.

       c.    **Daily Price Movements in NYMEX Outright Futures Contracts**. On March 9, the actual difference and percentage change between the midpoint bid-ask prices immediately before the Pre-Close and bid-ask prices after the settlement for the front, second and third month (*i.e.*, April ("J"), May ("K") and June ("M")) NYMEX RB07 outright futures contracts were as follows:

| NYMEX RB07 Outright Futures Contracts | | |
|---|---|---|
| | Bid-Ask Midpoint Price Immediately Before Pre-Close | Bid-Ask Price 15 Minutes After Settlement |

**FILED UNDER SEAL**

| March 9, 2007 | Front Month | 2nd Month | 3rd Month | Front Month | 2nd Month | 3rd Month |
|---|---|---|---|---|---|---|
| | 1.9007 | 1.88935 | 1.8875 | 1.89665 | 1.88575 | 1.88325 |
| Actual difference | | | | (0.00405) | (0.0036) | (0.00425) |
| Percentage Change | | | | (0.21308) | (0.19054) | (0.22517) |

133.   **March 9:  The Optiver Defendants' Trading In May 2007 NYMEX New York Harbor Gasoline Outright Futures and TAS Contracts**.

a.      On March 9, the Optiver Defendants, per Defendant Optiver US and its employees and agents, traded the NYMEX RB07K TAS contract as follows:

| RB07K TAS Contract | | | | | | | |
|---|---|---|---|---|---|---|---|
| March 9, 2007 | Contracts Bought | Purchase Price Range | Average Purchase Price | Contracts Sold | Sale Price Range | Average Sale Price | Net Total Contracts Bought or Sold |
| Before Pre-Close | 88 | 1.8889 - 1.8898 | 1.88922 | (407) | 1.8896 - 1.8901 | 1.88965 | (319) |
| | | | | | | | (319) |

i.      Optiver accumulated a net position of (319) RB07K TAS contracts before the Pre-Close.

ii.     Before the Pre-Close, Optiver bought 88 RB07K TAS contracts at prices from 1.8889 to 1.8898, averaging 1.88922; and sold (407) contracts at prices from 1.8896 to 1.8901, averaging 1.88965.  Optiver sold a net total of (319) RB07K TAS contracts.

b.      Also on March 9, the Optiver Defendants, per Defendant Optiver US and its employees and agents, traded the NYMEX RB07K outright futures contract as follows:

| RB07K Outright Futures Contract | | | | | | | |
|---|---|---|---|---|---|---|---|
| March 9, 2007 | Contracts Bought | Purchase Price Range | Average Purchase Price | Contracts Sold | Sale Price Range | Average Sale Price | Net Total Contracts Bought or Sold |

**FILED UNDER SEAL**

| Pre-Close | 55 | 1.889 - 1.8909 | 1.88996 | | | | 55 |
|---|---|---|---|---|---|---|---|
| | | | | | | | 55 |

       i.    Optiver traded a net total of 55 RB07K outright futures contracts in the opposite direction of its corresponding accumulated net TAS position, trading 55 outrights (100%) during the Pre-Close.

       ii.    During the Pre-Close, Optiver bought 55 RB07K outright futures contracts at prices from 1.889 to 1.8909, averaging 1.88996.  Optiver bought a net total of 55 RB07K outright futures contracts.

       c.    **Daily Price Movements in NYMEX Outright Futures Contracts**.  *See* ¶ 132(c) *infra*.

    134.    **March 9:  The Optiver Defendants' Trading In April 2007 NYMEX New York Harbor Heating Oil Outright Futures and TAS Contracts**.

       a.    On March 9, the Optiver Defendants, per Defendant Optiver US and its employees and agents, traded the NYMEX HO07J TAS contract as follows:

| HO07J TAS Contract | | | | | | | |
|---|---|---|---|---|---|---|---|
| March 9, 2007 | Contracts Bought | Purchase Price Range | Average Purchase Price | Contracts Sold | Sale Price Range | Average Sale Price | Net Total Contracts Bought or Sold |
| Before Pre-Close | 1157 | 1.712 - 1.7122 | 1.71211 | (76) | 1.7123 - 1.7123 | 1.7123 | 1081 |
| Pre-Close | 134 | 1.7119 - 1.712 | 1.71195 | | | | 134 |
| | | | | | | | **1215** |

       i.    Optiver accumulated a net position of 1215 HO07J TAS contracts before and during the Pre-Close.

ii.     During the Pre-Close, Optiver bought 1157 HO07J TAS contracts at prices from 1.712 to 1.7122, averaging 1.71211; and sold (76) contracts at 1.7123.  Optiver bought a net total of 1081 HO07J TAS contracts.

iii.    During the Pre-Close, Optiver bought 134 HO07J TAS contracts at prices from 1.7119 to 1.712, averaging 1.71195.  Optiver bought a net total of 134 HO07J TAS contracts.

b.      Also on March 9, the Optiver Defendants, per Defendant Optiver US and its employees and agents, traded the NYMEX HO07J outright futures contract as follows:

| HO07J Outright Futures Contract | | | | | | | |
|---|---|---|---|---|---|---|---|
| March 9, 2007 | Contracts Bought | Purchase Price Range | Average Purchase Price | Contracts Sold | Sale Price Range | Average Sale Price | Net Total Contracts Bought or Sold |
| Pre-Close | 5 | 1.7215 - 1.7215 | 1.7215 | (462) | 1.7147 - 1.722 | 1.71740 | (457) |
| Close | 6 | 1.7118 - 1.7118 | 1.7118 | (721) | 1.7109 - 1.7156 | 1.71227 | (715) |
| Post-Close | 20 | 1.7111 - 1.715 | 1.71353 | (39) | 1.7122 - 1.714 | 1.71305 | (19) |
| | | | | | | | **(1191)** |

i.      Optiver traded a net total of (1191) HO07J outright futures contracts in the opposite direction of its corresponding accumulated net TAS position, trading (457) outrights (38.37%) during the Pre-Close and (715) outrights (60.03%) during the Close.  Optiver traded its remaining (19) outrights (1.59%) after the Close.

ii.     During the Pre-Close, Optiver bought 5 HO07J outright futures contracts at 1.7215; and sold (462) contracts at prices from 1.7147 to 1.722, averaging 1.71740.  Optiver sold a net total of (457) HO07J outright futures contracts.

**FILED UNDER SEAL**

   iii. During the Close, Optiver bought 6 HO07J outright futures contracts at 1.7118; and sold (721) contracts at prices from 1.7109 to 1.7156, averaging 1.71227.  Optiver sold a net total of (715) HO07J outright futures contracts.

   iv. During the Post-Close, Optiver bought 20 HO07J outright futures contracts at prices from 1.7111 to 1.715, averaging 1.71353; and sold (39) contracts at prices from 1.7122 to 1.714, averaging 1.71305.  Optiver sold a net total of (19) HO07J outright futures contracts.

   c. **Daily Price Movements in NYMEX Outright Futures Contracts**.  On March 9, the actual difference and percentage change between the midpoint bid-ask prices immediately before the Pre-Close and bid-ask prices after the settlement for the front, second and third month (*i.e.*, April ("J"), May ("K") and June ("M")) NYMEX HO07 outright futures contracts were as follows:

| NYMEX HO07 Outright Futures Contracts | | | | | | |
|---|---|---|---|---|---|---|
| | Bid-Ask Midpoint Price Immediately Before Pre-Close | | | Bid-Ask Price 15 Minutes After Settlement | | |
| March 9, 2007 | Front Month | 2nd Month | 3rd Month | Front Month | 2nd Month | 3rd Month |
| | 1.7204 | 1.7182 | 1.72925 | 1.71525 | 1.71395 | 1.7246 |
| Actual difference | | | | (0.00515) | (0.00425) | (0.00465) |
| Percentage Change | | | | (0.29935) | (0.24735) | (0.2689) |

135. **March 9:  The Optiver Defendants' Trading In May 2007 NYMEX New York Harbor Heating Oil Outright Futures and TAS Contracts**.

   a. On March 9, the Optiver Defendants, per Defendant Optiver US and its employees and agents, traded the NYMEX HO07K TAS contract as follows:

| HO07K TAS Contract |
|---|

| March 9, 2007 | Contracts Bought | Purchase Price Range | Average Purchase Price | Contracts Sold | Sale Price Range | Average Sale Price | Net Total Contracts Bought or Sold |
|---|---|---|---|---|---|---|---|
| Before Pre-Close | 305 | 1.7105 - 1.7106 | 1.71056 | | | | 305 |
| Pre-Close | 44 | 1.7097 - 1.7097 | 1.7097 | | | | 44 |
| | | | | | | | 349 |

      i.    Optiver accumulated a net position of 349 HO07K TAS contracts before

and during the Pre-Close.

      ii.    Before the Pre-Close, Optiver bought 305 HO07K TAS contracts at prices

from 1.7105 to 1.7106, averaging 1.71056.  Optiver bought a net total of 305 HO07K TAS

contracts.

      iii.    During the Pre-Close, Optiver bought 44 HO07K TAS contracts at 1.7097.

Optiver bought a net total of 44 HO07K TAS contracts.

      b.    Also on March 9, the Optiver Defendants, per Defendant Optiver US and

its employees and agents, traded the NYMEX HO07K outright futures contract as follows:

| HO07K Outright Futures Contract | | | | | | | |
|---|---|---|---|---|---|---|---|
| March 9, 2007 | Contracts Bought | Purchase Price Range | Average Purchase Price | Contracts Sold | Sale Price Range | Average Sale Price | Net Total Contracts Bought or Sold |
| Pre-Close | | | | (12) | 1.7183 - 1.7201 | 1.71925 | (12) |
| Close | | | | (40) | 1.7101 - 1.7108 | 1.71033 | (40) |
| Post-Close | 7 | 1.7127 - 1.7127 | 1.7127 | (1) | 1.712 - 1.712 | 1.712 | 6 |
| | | | | | | | (46) |

**FILED UNDER SEAL**

      i.     Optiver traded a net total of (46) HO07K outright futures contracts in the opposite direction of its corresponding accumulated net TAS position, trading (12) outrights (20.68%) during the Pre-Close and (40) outrights (68.96%) during the Close.  Optiver traded its remaining (6) outrights (10.34%) after the Close.

      ii.     During the Pre-Close, Optiver sold (12) HO07K outright futures contracts at prices from 1.7183 to 1.7201, averaging 1.71925.  Optiver sold a net total of (12) HO07K outright futures contracts.

      iii.     During the Close, Optiver sold (40) HO07K outright futures contracts at prices from 1.7101 to 1.7108, averaging 1.71033.  Optiver sold a net total of (40) HO07K outright futures contracts.

      iv.     During the Post-Close, Optiver bought 7 HO07K outright futures contracts at 1.7127; and sold (1) contract at 1.712.  Optiver bought a net total of 6 HO07K outright futures contracts.

      c.     **Daily Price Movements in NYMEX Outright Futures Contracts**.  *See* ¶ 135(c) *infra*.

## C. March 13, 2007 E-mail exchange between Defendant Dowson and Defendant Meijer, Copying Defendant van Kempen Discussing Trading at Settlement Contracts

136.     On March 13, 2007, the Optiver Defendants, per Defendant Meijer, sent an e-mail to Defendant Dowson, copying Defendant van Kempen and asking "Have you tried the tas's in the crude already?" OPTI-US 000003.  Defendant Dowson replied:

> We quote the crude every day.  But I am very wary about deliberately building up a big position there.  **To be able to move the crude, we would need a position of substantial size**.  I would think of the order 5000 contracts.  Are you willing to do it that big already?

*Id*. [emphasis supplied].

**FILED UNDER SEAL**

137.    The Optiver Defendants, per Defendant Meijer, responded at 9:32 a.m. that

"**[w]ell the 50/250 limit holds, so a bit over 4000 you can do**." OPTI-US 000003 [emphasis

supplied].

138.    **March 13: The Optiver Defendants' Trading In April 2007 NYMEX New**

**York Harbor Gasoline Outright Futures and TAS Contracts.**

a.    On March 13, the Optiver Defendants, per Defendant Optiver US and its

employees and agents, traded the NYMEX RB07J TAS contract as follows:

| RB07J TAS Contract | | | | | | | |
|---|---|---|---|---|---|---|---|
| March 13, 2007 | Contracts Bought | Purchase Price Range | Average Purchase Price | Contracts Sold | Sale Price Range | Average Sale Price | Net Total Contracts Bought or Sold |
| Before Pre-Close | 500 | 1.9313-1.9317 | 1.9315 | (679) | 1.9318-1.932 | 1.931871 | (179) |
| Pre-Close | | | | (34) | 1.9318-1.9319 | 1.93185 | (34) |
| | | | | | | | **(213)** |

i.    Optiver accumulated a net total position of (213) RB07J TAS contracts

before and during the Pre-Close.

ii.    Before the Pre-Close, Optiver bought 500 RB07J TAS contracts at prices

ranging between 1.9313-1.9317, for an average of 1.9315; and sold (679) contracts at prices

ranging between 1.9318-1.932, for an average of 1.931871.  Optiver sold a net total of (179)

RB07J TAS contracts.

iii.    During the Pre-Close, Optiver sold (34) RB07J TAS contracts at prices

ranging between 1.9318-1.9319, for an average of 1.93185.  Optiver sold a net total of (34)

RB07J TAS contracts.

**FILED UNDER SEAL**

b.      Also on March 13, the Optiver Defendants, per Defendant Optiver US and

its employees and agents, traded the NYMEX RB07J outright futures contract as follows:

| RB07J Outright Futures Contract | | | | | | | |
|---|---|---|---|---|---|---|---|
| March 13, 2007 | Contracts Bought | Purchase Price Range | Average Purchase Price | Contracts Sold | Sale Price Range | Average Sale Price | Net Total Contracts Bought or Sold |
| Pre-Close | 103 | 1.9272-1.9287 | 1.928076 | (3) | 1.9283-1.9289 | 1.928567 | 100 |
| Close | 107 | 1.929-1.9341 | 1.930182 | (2) | 1.9317-1.9336 | 1.93265 | 105 |
| Post-Close | 10 | 1.934-1.9369 | 1.93542 | (9) | 1.9346-1.9375 | 1.936033 | 1 |
| | | | | | | | **206** |

i.      Optiver traded a net total of 206 RB07J outright futures contracts in the

opposite direction of its corresponding accumulated net TAS position, trading 100 outrights

(48.54%) during the Pre-Close and 105 outrights (50.97%) during the Close.  Optiver traded its

remaining 1 outright (0.49%) after the Close.

ii.      During the Pre-Close, Optiver bought 103 RB07J outright futures

contracts at prices ranging between 1.9272-1.9287, for an average of 1.928076; and sold (3)

contracts at prices ranging between 1.9283-1.9289, for an average of 1.928567.  Optiver bought

a net total of 100 RB07J outright futures contracts.

iii.      During the Close, Optiver bought 107 RB07J outright futures contracts at

prices ranging between 1.929-1.9341, for an average of 1.930182; and sold (2) contracts at prices

ranging between 1.9317-1.9336, for an average of 1.93265.  Optiver bought a net total of 105

RB07J outright futures contracts.

iv.      During the Post-Close, Optiver bought 10 RB07J outright futures contracts

at prices ranging between 1.934-1.9369, for an average of 1.93542; and sold (9) contracts at

59
**FILED UNDER SEAL**

prices ranging between 1.9346-1.9375, for an average of 1.936033.  Optiver bought a net total of

1 RB07J outright futures contracts.

        c.      **Daily Price Movements in NYMEX Outright Futures Contracts**.  On

March 13, the actual difference and percentage change between the midpoint bid-ask prices

immediately before the Pre-Close and bid-ask prices after the settlement for the front, second and

third month (*i.e.*, April ("J"), May ("K") and June ("M")) NYMEX RB07 outright futures

contracts were as follows:

| NYMEX RB07 Outright Futures Contracts | | | | | | |
|---|---|---|---|---|---|---|
| | Bid-Ask Midpoint Price Immediately Before Pre-Close | | | Bid-Ask Price 15 Minutes After Settlement | | |
| March 13, 2007 | Front Month | 2nd Month | 3rd Month | Front Month | 2nd Month | 3rd Month |
| | 1.9255 | 1.89225 | 1.88085 | 1.9371 | 1.9012 | 1.88745 |
| Actual difference | | | | 0.0116 | 0.00895 | 0.0066 |
| Percentage Change | | | | 0.602441 | 0.472982 | 0.350905 |

139.    **March 13: The Optiver Defendants' Trading In May 2007 NYMEX New**

**York Harbor Gasoline Outright Futures and TAS Contracts.**

        a.      On March 13, the Optiver Defendants, per Defendant Optiver US and its

employees and agents, traded the NYMEX RB07K TAS contract as follows:

| RB07K TAS Contract | | | | | | | |
|---|---|---|---|---|---|---|---|
| March 13, 2007 | Contracts Bought | Purchase Price Range | Average Purchase Price | Contracts Sold | Sale Price Range | Average Sale Price | Net Total Contracts Bought or Sold |
| Before Pre-Close | 1 | 1.8979-1.8979 | 1.8979 | (521) | 1.8978-1.8986 | 1.898159 | (520) |
| Pre-Close | | | | | | | |
| | | | | | | | **(520)** |

**FILED UNDER SEAL**

    i. Optiver accumulated a net total position of (520) RB07K TAS contracts before the Pre-Close.

    ii. Before the Pre-Close, Optiver bought 1 RB07K TAS contract at 1.8979; and sold (521) contracts at prices ranging between 1.8978-1.8986, for an average of 1.898159. Optiver bought a net total of (520) RB07K TAS contracts.

    a. Also on March 13, the Optiver Defendants, per Defendant Optiver US and its employees and agents, traded the NYMEX RB07K outright futures contract as follows:

| RB07K Outright Futures Contract | | | | | | | |
|---|---|---|---|---|---|---|---|
| March 13, 2007 | Contracts Bought | Purchase Price Range | Average Purchase Price | Contracts Sold | Sale Price Range | Average Sale Price | Net Total Contracts Bought or Sold |
| Pre-Close | 5 | 1.8939-1.8939 | 1.8939 | 0 | | | 5 |
| Close | 404 | 1.8943-1.9002 | 1.898222 | 0 | | | 404 |
| Post-Close | 2 | 1.899-1.899 | 1.899 | 0 | | | 2 |
| | | | | | | | 411 |

    i. Optiver traded a net total of 411 RB07K outright futures contracts in the opposite direction of its corresponding accumulated net TAS position, trading 5 outrights (1.22%) during the Pre-Close and 404 outrights (98.30%) during the Close.  Optiver traded its remaining 2 outrights (0.49%) after the Close.

    ii. During the Pre-Close, Optiver bought 5 RB07K outright futures contracts at 1.8939.

    iii. During the Close, Optiver bought 404 RB07K outright futures contracts at prices ranging between 1.8943-1.9002, for an average of 1.898222.

**FILED UNDER SEAL**

iv.    During the Post-Close, Optiver bought 2 RB07K outright futures contracts at 1.899.

b.    **Daily Price Movements in NYMEX Outright Futures Contracts**. *See* ¶ 138(c) *infra*.

140.    **March 13: The Optiver Defendants' Trading In April 2007 NYMEX New York Harbor Heating Oil Outright Futures and TAS Contracts.**

a.    On March 13, the Optiver Defendants, per Defendant Optiver US and its employees and agents, traded the NYMEX HO07J TAS contract as follows:

| HO07J TAS Contract | | | | | | | |
|---|---|---|---|---|---|---|---|
| March 13, 2007 | Contracts Bought | Purchase Price Range | Average Purchase Price | Contracts Sold | Sale Price Range | Average Sale Price | Net Total Contracts Bought or Sold |
| Before Pre-Close | | | | (487) | 1.6902-1.6904 | 1.690265 | (487) |
| Pre-Close | | | | (115) | 1.6902-1.6902 | 1.6902 | (115) |
| | | | | | | | **(602)** |

i.    Before the Pre-Close, Optiver sold (487) HO07J TAS contracts at prices ranging between 1.6902-1.6904, for an average of 1.690265.  Optiver sold a net total of (487) HO07J TAS contracts.

ii.    During the Pre-Close, Optiver sold (115) HO07J TAS contracts at 1.6902. Optiver sold a net total of (115) RB07J TAS contracts.

b.    Also on March 13, the Optiver Defendants, per Defendant Optiver US and its employees and agents, traded the NYMEX HO07J outright futures contract as follows:

| HO07J Outright Futures Contract |
|---|

| March 13, 2007 | Contracts Bought | Purchase Price Range | Average Purchase Price | Contracts Sold | Sale Price Range | Average Sale Price | Net Total Contracts Bought or Sold |
|---|---|---|---|---|---|---|---|
| Pre-Close | 188 | 1.6835-1.6864 | 1.685147 | (2) | 1.6836-1.6845 | 1.68405 | 186 |
| Close | 342 | 1.6864-1.6945 | 1.691344 | (8) | 1.6867-1.6943 | 1.690388 | 334 |
| Post-Close | 61 | 1.6909-1.6978 | 1.694848 | (12) | 1.6924-1.6984 | 1.694683 | 49 |
| | | | | | | | **569** |

    i.    Optiver traded a net total of 569 HO07J outright futures contracts in the opposite direction of its corresponding accumulated net TAS position, trading 186 outrights (32.69%) during the Pre-Close and 334 outrights (58.70%) during the Close. Optiver traded its remaining 49 outrights (8.61%) after the Close.

    ii.    During the Pre-Close, Optiver bought 188 HO07J outright futures contracts at prices ranging between 1.6835-1.6864, for an average of 1.685147; and sold (2) contracts at prices ranging between 1.6836-1.6845, for an average of 1.68405. Optiver bought a net total of 186 HO07J outright futures contracts.

    iii.    During the Close, Optiver bought 342 HO07J outright futures contracts at prices ranging between 1.6864-1.6945, for an average of 1.691344; and sold (8) contracts at prices ranging between 1.6867-1.6943, for an average of 1.690388. Optiver bought a net total of 334 HO07J outright futures contracts.

    iv.    During the Post-Close, Optiver bought 61 HO07J outright futures contracts at prices ranging between 1.6909-1.6978, for an average of 1.694848; and sold (12) contracts at prices ranging between 1.6924-1.6984, for an average of 1.694683. Optiver bought a net total of 49 HO07J outright futures contracts.

**FILED UNDER SEAL**

c.   **Daily Price Movements in NYMEX Outright Futures Contracts**.  On March 13, the actual difference and percentage change between the midpoint bid-ask prices immediately before the Pre-Close and bid-ask prices after the settlement for the front, second and third month (*i.e.*, April ("J"), May ("K") and June ("M")) NYMEX HO07 outright futures contracts were as follows:

| NYMEX HO07 Outright Futures Contracts | | | | | | |
|---|---|---|---|---|---|---|
| | Bid-Ask Midpoint Price Immediately Before Pre-Close | | | Bid-Ask Price 15 Minutes After Settlement | | |
| March 13, 2007 | Front Month | 2nd Month | 3rd Month | Front Month | 2nd Month | 3rd Month |
| | 1.6834 | 1.6826 | 1.69495 | 1.6944 | 1.6932 | 1.70535 |
| Actual difference | | | | 0.011 | 0.0106 | 0.0104 |
| Percentage Change | | | | 0.653439 | 0.629977 | 0.613587 |

141.   **March 13:  The Optiver Defendants' Trading In April 2007 NYMEX Light Sweet Crude Oil Outright Futures and TAS Contracts**.

a.   On March 13, the Optiver Defendants, per Defendant Optiver US and its employees and agents, traded the NYMEX CL07J TAS contract as follows:

| CL07J TAS Contract | | | | | | | |
|---|---|---|---|---|---|---|---|
| March 13, 2007 | Contracts Bought | Purchase Price Range | Average Purchase Price | Contracts Sold | Sale Price Range | Average Sale Price | Net Total Contracts Bought or Sold |
| Before Pre-Close | 1886 | 57.93-57.94 | 57.931 | (1327) | 57.93-57.94 | 57.93967 | 559 |
| Pre-Close | | | | (92) | 57.94-57.94 | 57.94 | (92) |
| | | | | | | | **467** |

i.   Optiver accumulated a net total position of 467 CL07J TAS contracts before and during the Pre-Close.

**FILED UNDER SEAL**

ii.    Before the Pre-Close, Optiver bought 1886 CL07J TAS contracts at prices ranging between 57.93-57.94, for an average of 57.931; and sold (1327) contracts at prices ranging between 57.93-57.94, for an average of 57.93967.  Optiver bought a net total of 559 CL07J TAS contracts.

b.    Also on March 13, the Optiver Defendants, per Defendant Optiver US and its employees and agents, traded the NYMEX CL07J outright futures contract as follows:

| CL07J Outright Futures Contract | | | | | | | |
|---|---|---|---|---|---|---|---|
| March 13, 2007 | Contracts Bought | Purchase Price Range | Average Purchase Price | Contracts Sold | Sale Price Range | Average Sale Price | Net Total Contracts Bought or Sold |
| Pre-Close | 8 | 57.87-57.96 | 57.9125 | (1) | 57.96-57.96 | 57.96 | 7 |
| Close | 141 | 57.89-58.02 | 57.93442 | (1) | 58.03-58.03 | 58.03 | 140 |
| Post-Close | 6 | 58-58.06 | 58.04333 | (12) | 57.97-58.06 | 58.012 | (6) |
| | | | | | | | **141** |

i.    Optiver traded a net total of 153 CL07J outright futures contracts trading 7 outrights (4.58%) during the Pre-Close and 140 outrights (91.50%) during the Close.  Optiver traded its remaining (6) outrights (3.92%) after the Close.

ii.    During the Pre-Close, Optiver bought 8 CL07J outright futures contracts at prices ranging between 57.87-57.96, for an average of 57.9125; and sold (1) contract at 57.96. Optiver bought a net total of 7 CL07J outright futures contracts.

iii.    During the Close, Optiver bought 141 CL07J outright futures contracts at prices ranging between 57.89-58.02, for an average of 57.93442; and sold (1) contract at 58.03. Optiver bought a net total of 140 CL07J outright futures contracts.

**FILED UNDER SEAL**

iv.     During the Post-Close, Optiver bought 6 CL07J outright futures contracts at prices ranging between 58-58.06, for an average of 58.04333; and sold (12) contracts at prices ranging between 57.97-58.06, for an average of 58.012.  Optiver sold a net total of (6) CL07J outright futures contracts.[7]

c.     **Daily Price Movements in NYMEX Outright Futures Contracts**.  On March 13, the actual difference and percentage change between the midpoint bid-ask prices immediately before the Pre-Close and bid-ask prices after the settlement for the front, second and third month (*i.e.*, April ("J"), May ("K") and June ("M")) NYMEX CL07 outright futures contracts were as follows:

| NYMEX CL07 Outright Futures Contracts | | | | | | |
|---|---|---|---|---|---|---|
| | Bid-Ask Midpoint Price Immediately Before Pre-Close | | | Bid-Ask Price 15 Minutes After Settlement | | |
| March 13, 2007 | Front Month | 2nd Month | 3rd Month | Front Month | 2nd Month | 3rd Month |
| | 57.925 | 60.135 | 61.47 | 58.055 | 60.25 | 61.585 |
| Actual difference | | | | 0.13 | 0.115 | 0.115 |
| Percentage Change | | | | 0.22443 | 0.19124 | 0.18708 |

D. **March 14, 2007, Conversation between Defendant Christopher Dowson and Defendant Randal Meijer Regarding Honing Their Plans to Manipulate the Market**

142.    On March 14, 2007, the Optiver Defendants, per Defendant Meijer, called Defendant Dowson inquiring as to what Dowson's positions were and they ultimately discussed how to manipulate the market in the most profitable manner.

143.    The Optiver Defendants, per Defendants Dowson and Meijer, discussed whether it would be preferable to take positions in different energy products opposite to one another to

---

[7] During the Post-Close, Optiver also bought 6 CL07K outright contracts at prices from 60.24-60.27, for an average of 60.2475; and sold (1) CL07K outright contract at 60.25.

**FILED UNDER SEAL**

reduce risk or to take positions in the same direction to generate more power to move the markets.  Defendant Dowson explained "[s]o, we can have it, again like I said to you, so we doing two things in opposite directions and we try to push the spread more than just the market." Transcript of 12B220.wav at 87 (March 14, 2007 call from Randal Meijer (Amsterdam) to Christopher Dowson (Chicago)).

144.    The Optiver Defendants, per Defendants Dowson and Meijer, had the following exchange:

| | |
|---|---|
| Meijer | But it doesn't make sense actually to have them an opposite position in things that are correlated. |
| Dowson | Um, well you're actually, the way I see it is this, you just it's um potentially less profitable. |
| Meijer | Yah. |
| Dowson | Certainly, um but that you could argue about but, it is certainly less risky; because if you look at it like this okay, um **if you do them both in the same direction, you just got more powerful essentially**. |
| Meijer | Yah, exactly because if you look at the example more simple that you have a hundred percent let's say ah for the same product for just two months. |

*Id*. at 88.

145.    The Optiver Defendants, per Defendants Dowson and Meijer, then discussed their power in the NYMEX New York Harbor Gasoline market, explaining that under the $250 million limit that was established, they could accumulate a position of 3,000, concluding that although they wouldn't even need that large of a position to "bully" the market, a larger position would give them more power to manipulate the market.  Transcript of 12B220.wav at 89 [emphasis supplied].

146.    The Optiver Defendants, per Defendants Dowson and Meijer, had the following exchange:

| | |
|---|---|
| Dowson | If we get to a position, if we have 3,000 RBOBs [New |

**FILED UNDER SEAL**

|  | York Harbor gasoline contracts].... **You don't need um all of that in order to push it if you have a thousand you can really bully it around** |
| Meijer | Yeah, ok but **you can bully around more with more** .... |

*Id.* [emphasis supplied].

147.    The Optiver Defendants, per Dowson and Meijer, continued to discuss the risks and potential benefits of taking positions in all products in the same direction versus taking opposition positions and agree that their decision should be based on their confidence that they can move the market.   Defendant Dowson expressed certainty that Optiver could move the market for New York Harbor gasoline, had doubts about their power in Crude oil, but said he was going to try.  Transcript of 12B220.wav at 89-91.

148.    The Optiver Defendants, per Defendants Dowson and Meijer, had the following exchange:

| Dowson | Basically you just take in more of a gamble if you have done the same way as each other.  Alright so the thing the thing that's **the deciding factor is really how powerful are we**. |
| Meijer | Yeah, but I agree that the definitely will be more of a gamble but of course it will be relief in the entire idea relied on the fact or the assumption that **we can move the market**. |
| Dowson | Yea – it's a bit – **but what I'm sure of is we can move the gasoline market.**  Whether we can move the complex - |
| Meijer | Yea. |
| Dowson | That, I'm not sure of. |
| Meijer | Yea, well with – yea, yea **you said you need to try**. |
| Dowson | Exactly so we need to try so when we have a good opportunity for it then uh we should definitely try.... |

[emphasis supplied].

149.    Defendants, per Dowson, then explained to Defendant Meijer that he would be more comfortable bidding at even to attract volume into the TAS market which would not

ordinarily trade in TAS, and thereby "manufacture" a TAS position for Optiver, in a product which he would be trading opposite a different product.  Transcript of 12B220.wav at 91-92.

150.    Defendants, per Defendants Dowson and Meijer, had the following exchange:

| | |
|---|---|
| Dowson | … lets put it this way.  I would be willing to manufacture a position opposite to each other.  So trade - |
| Meijer | Ah |
| Dowson | Trade it even to get it opposite each other.  Um, rather than trade it even to get them in the same direction but. |
| Meijer | Ah, ah I don't know yet.  I haven't seen enough to really judge in the. |
| Dowson | But that's it really comes from the crude, I'm still just a little bit cautious of the crude but um. |

*Id.*

151.    Defendants continued their conversation with a discussion about the Brent-WTI spread during which Defendant Dowson commented "the Brents, we're really trying to get a big position now…. because this Brent-WTI spread it would be nice to push that in our favor" to which Meijer agreed.  *Id.* at 92.

152.    **March 14: The Optiver Defendants' Trading In April 2007 NYMEX New York Harbor Gasoline Outright Futures and TAS Contracts**

a.     On March 14, the Optiver Defendants, per Defendant Optiver US and its employees and agents, traded the NYMEX RB07J TAS contract as follows:

| RB07J TAS Contract | | | | | | | |
|---|---|---|---|---|---|---|---|
| March 14, 2007 | Contracts Bought | Purchase Price Range | Average Purchase Price | Contracts Sold | Sale Price Range | Average Sale Price | Net Total Contracts Bought or Sold |
| Before Pre-Close | 1820 | 1.9282-1.9283 | 1.928292 | (28) | 1.9284-1.9287 | 1.9285 | 1792 |
| Pre-Close | | | | | | | |
| | | | | | | | 1792 |

69
**FILED UNDER SEAL**

i.      Optiver accumulated a net total position of 1792 RB07J TAS contracts before the Pre-Close.

ii.      Before the Pre-Close, Optiver bought 1820 RB07J TAS contracts at prices ranging between 1.9282-1.9283, for an average of 1.928292; and sold (28) contracts at prices ranging between 1.9284-1.9287, for an average of 1.9285.  Optiver bought a net total of 1792 RB07J TAS contracts.

b.      Also on March 14, the Optiver Defendants, per Defendant Optiver US and its employees and agents, traded the NYMEX RB07J outright futures contract as follows:

| RB07J Outright Futures Contract | | | | | | | |
|---|---|---|---|---|---|---|---|
| March 14, 2007 | Contracts Bought | Purchase Price Range | Average Purchase Price | Contracts Sold | Sale Price Range | Average Sale Price | Net Total Contracts Bought or Sold |
| Pre-Close | 0 | | | (624) | 1.9374-1.9415 | 1.939542 | (624) |
| Close | 0 | | | (1094) | 1.9225-1.9377 | 1.927189 | (1094) |
| Post-Close | 27 | 1.9163-1.9286 | 1.924342 | (23) | 1.917-1.9275 | 1.924715 | 4 |
| | | | | | | | **1714** |

i.      Optiver traded a net total of 1722 RB07J outright futures contracts in the opposite direction of its corresponding accumulated net TAS position, trading (624) outrights (36.24%) during the Pre-Close and (1094) outrights (63.53%) during the Close.  Optiver traded its remaining 4 outrights (0.23%) after the Close.

ii.      During the Pre-Close, Optiver sold (624) RB07J outright futures contracts at prices ranging between 1.9374-1.9415, for an average of 1.939542.

iii.      During the Close, Optiver sold (1094) RB07J outright futures contracts at prices ranging between 1.9225-1.9377, for an average of 1.927189.

**FILED UNDER SEAL**

iv.    During the Post-Close, Optiver bought 27 RB07J outright futures contracts at prices ranging between 1.9163-1.9286, for an average of 1.924342; and sold (23) contracts at prices ranging between 1.917-1.9275, for an average of 1.924715.  Optiver bought a net total of 4 RB07J outright futures contract.

c.    **Daily Price Movements in NYMEX Outright Futures Contracts**.  On March 14, the actual difference and percentage change between the midpoint bid-ask prices immediately before the Pre-Close and bid-ask prices after the settlement for the front, second and third month (*i.e.*, April ("J"), May ("K") and June ("M")) NYMEX RB07 outright futures contracts were as follows:

| NYMEX RB07 Outright Futures Contracts | | | | | | |
|---|---|---|---|---|---|---|
| | Bid-Ask Midpoint Price Immediately Before Pre-Close | | | Bid-Ask Price 15 Minutes After Settlement | | |
| March 14, 2007 | Front Month | 2nd Month | 3rd Month | Front Month | 2nd Month | 3rd Month |
| | 1.938 | 1.90225 | 1.8903 | 1.92695 | 1.89525 | 1.88315 |
| Actual difference *a* | | | | (0.01105) | (0.007) | (0.00715) |
| Percentage Change | | | | (0.57018) | (0.36799) | (0.37825) |

153.    **March 14: The Optiver Defendants' Trading In April 2007 NYMEX Light Sweet Crude Oil Outright Futures and TAS Contracts**

a.    On March 14, the Optiver Defendants, per Defendant Optiver US and its employees and agents, traded the NYMEX CL07J TAS contract as follows:

| CL07J TAS Contract | | | | | | | |
|---|---|---|---|---|---|---|---|
| March 14, 2007 | Contracts Bought | Purchase Price Range | Average Purchase Price | Contracts Sold | Sale Price Range | Average Sale Price | Net Total Contracts Bought or Sold |
| Before Pre-Close | 906 | 58.16-58.17 | 58.16067 | | | | 906 |

| Pre-Close | 481 | 58.16-58.16 | 58.16 | | | | 481 |
|---|---|---|---|---|---|---|---|
| | | | | | | | **1387** |

      i.    Optiver accumulated a net total position of 1387 CL07J TAS contracts before and during the Pre-Close.

      ii.    Before the Pre-Close, Optiver bought 906 CL07J TAS contracts at prices between 58.16-58.17, for an average of 58.16067.

      iii.    During the Pre-Close, Optiver bought 481 CL07J TAS contracts at 58.16.

      b.    Also on March 14, the Optiver Defendants, per Defendant Optiver US and its employees and agents, traded the NYMEX CL07J outright futures contract as follows:

| CL07J Outright Futures Contract | | | | | | | |
|---|---|---|---|---|---|---|---|
| March 14, 2007 | Contracts Bought | Purchase Price Range | Average Purchase Price | Contracts Sold | Sale Price Range | Average Sale Price | Net Total Contracts Bought or Sold |
| Pre-Close | | | | (258) | 58.22-58.29 | 58.258 | (258) |
| Close | | | | (780) | 58.13-58.22 | 58.15713 | (780) |
| Post-Close | 16 | 58.12-58.2 | 58.17077 | (30) | 58.16-58.22 | 58.18909 | (14) |
| | | | | | | | **(1052)** |

      i.    Optiver traded a net total of 1052 CL07J outright futures contracts in the opposite direction of its corresponding accumulated net TAS position, trading (258) outrights (24.52%) during the Pre-Close and (780) outrights (74.14%) during the Close.  Optiver traded (14) outrights (1.33%) after the Close.

      ii.    During the Pre-Close, Optiver sold (258) CL07J outright futures contracts at prices ranging between 58.22-58.29, for an average of 58.258.

FILED UNDER SEAL

iii.    During the Close, Optiver sold (780) CL07J outright futures contracts at prices ranging between 58.13-58.22, for an average of 58.15713.

iv.    During the Post-Close, Optiver bought 16 CL07J outright futures contracts at prices ranging between 58.12-58.2, for an average of 58.17077; and sold (30) contracts at prices ranging between 58.16-58.22, for an average of 58.18909.  Optiver sold a net total of (14) CL07J outright futures contracts.

c.    **Daily Price Movements in NYMEX Outright Futures Contracts**.  On March 14, the actual difference and percentage change between the midpoint bid-ask prices immediately before the Pre-Close and bid-ask prices after the settlement for the front, second and third month (*i.e.*, April ("J"), May ("K") and June ("M")) NYMEX CL07 outright futures contracts were as follows:

| NYMEX CL07 Outright Futures Contracts | | | | | | |
|---|---|---|---|---|---|---|
| | Bid-Ask Midpoint Price Immediately Before Pre-Close | | | Bid-Ask Price 15 Minutes After Settlement | | |
| March 14, 2007 | Front Month | 2nd Month | 3rd Month | Front Month | 2nd Month | 3rd Month |
| | 58.285 | 60.565 | 61.83 | 58.235 | 60.5 | 61.745 |
| Actual difference | | | | (0.05) | (0.065) | (0.085) |
| Percentage Change | | | | (0.08579) | (0.10732) | (0.13747) |

155.    **March 15: The Optiver Defendants' Trading In April 2007 NYMEX New York Harbor Gasoline Outright Futures and TAS Contracts**

a.    On March 15, the Optiver Defendants, per Defendant Optiver US and its employees and agents, traded the NYMEX RB07J TAS contract as follows:

| **RB07J TAS Contract** |
|---|

73
**FILED UNDER SEAL**